STATE OF CONNECTICUT *v.* GEORGE BLASKO
(13003)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

542

Argued January 14—decision released March 17, 1987

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *John J. Kelly,* chief state's attorney, and *Domenick J. Galluzzo,* assistant state's attorney, for the appellant (state).

*Barbara Aaron,* with whom, on the brief, were *Albert J. McGrail* and *Patrick Tomasiewicz,* for the appellee (defendant).

PETERS, C. J. The issue in this appeal is whether the 1985 reform of the procedures governing investigatory grand juries terminated the authority of grand juries that had been duly constituted before the effective date of Public Acts 1985, No. 85-611. Because the continuing validity of a number of preexisting grand juries is

affected by our resolution of this issue, this is an unusual case demanding expedited resolution. Accordingly, on January 27, 1987, we announced our decision that Public Acts 1985, No. 85-611, as clarified by Public Acts 1986, No. 86-317, did not revoke the authority of or alter the procedures governing investigatory grand juries that had been properly authorized before October 1, 1985. *State* v. *Blasko*, 202 Conn. 189, 520 A.2d 207 (1987). We indicated then that a full opinion would follow in due course.

This case arises out of an information, dated December 12, 1985, charging the defendant, George Blasko, with two counts of sale of cocaine, in violation of General Statutes § 19-480 (a) (now § 21a-277 [a]), and two counts of sale of marihuana, in violation of General Statutes § 19-480 (b) (now § 21a-277 [b]). The trial court granted, in part, the defendant's motion to suppress evidence arising out of an investigation by a grand jury whose authority allegedly had been revoked by the enactment of Public Acts 1985, No. 85-611 (hereinafter P.A. No. 85-611), effective October 1, 1985. When the legislature thereafter enacted Public Acts 1986, No. 86-317 (hereinafter P.A. No. 86-317), the state filed a motion to reargue the dismissal, but the trial court, after a hearing, affirmed its earlier ruling in favor of the defendant. On the state's motion, the trial court dismissed the charges against the defendant with prejudice, and the state has appealed. See *State* v. *Ross*, 189 Conn. 42, 49–51, 454 A.2d 266 (1983).

The state does not contest the facts that underlie the trial court's ruling. On October 12, 1984, pursuant to General Statutes § 54-47,[1] the chief court adminis-

---

[1] General Statutes § 54-47, which was repealed in 1985, provided:

"Sec. 54-47. INVESTIGATIONS INTO COMMISSION OF CRIME. (a) Whenever it appears to the superior court for any judicial district that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed

trator appointed Superior Court Judge Anthony V. DeMayo to investigate professional gambling and

within the judicial district, said court may order an inquiry to be made into the matter, to be conducted before any judge, state referee, or any three judges of said court designated by it.

"(b) The chief state's attorney and the deputy chief state's attorney may also apply to the chief court administrator for an order that an inquiry be made to determine whether or not there is probable cause to believe that a crime or crimes have been committed. If the chief court administrator is satisfied from the application and any other papers or evidence submitted in support thereof that the administration of justice requires such an inquiry, he shall order that it be made and shall appoint a judge, a state referee or any three judges of the superior court to conduct the inquiry, with the assistance of the chief state's attorney, deputy chief state's attorney or any state's attorney or assistant state's attorney.

"(c) Such inquiries shall be conducted in public or private as said court or chief court administrator orders.

"(d) The attendance of witnesses and the production of documents at such inquiries may be compelled by subpoena, signed by any official authorized to issue such process.

"(e) If any witness properly summoned fails to appear or to produce any documents included in the subpoena, or if he fails to answer any proper question, the judge, referee or judges conducting the inquiry may report the matter to the state's attorney for the judicial district wherein the investigation is being conducted and such state's attorney may file a complaint setting forth the facts at any criminal session of the superior court in such judicial district. The court shall thereupon issue a citation to the witness to appear before said court and show cause why he should not be punished as for a contempt, and if, after hearing, the court finds that he failed to appear without due cause or failed to produce any document properly to be presented to the judge, state referee or judges conducting the investigation or failed to answer any proper question in the course of the investigation, it may punish him as it might a witness failing to appear, to produce a document properly to be considered or to answer a proper question before the court.

"(f) Witnesses may be examined by the judge, state referee or judges conducting the inquiry, by the state's attorney or assistant state's attorney or by any other attorney or attorneys appointed by the court for such purpose. The official stenographer of such superior court or his assistant shall record any testimony so taken. At any such hearing a witness shall have a right to counsel and shall be informed of such right by the official conducting the inquiry.

"(g) At the conclusion of such inquiry the judge, referee or judges conducting the inquiry shall file with the court a report and the court shall direct whether, and to what extent, the report shall be made available to

related criminal activity in Torrington.[2] After completing part of this inquiry, Judge DeMayo on December 12, 1985, filed with the Superior Court for the judicial district of Hartford-New Britain at Hartford a report entitled "first interim report." That same day, the defendant was arrested on the criminal charges described above.

While the grand jury investigation was pending, and prior to the defendant's arrest, the legislature enacted P.A. No. 85-611, entitled "An Act Concerning The Investigatory Grand Jury System," which became effective October 1, 1985.[3] That act repealed General

the public or interested parties. Any transcript of testimony taken at the inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report; provided any person accused of crime as a result of the inquiry shall have access at all reasonable times to the transcript of his own testimony given by him in such inquiry."

[2] Judge DeMayo was the second investigatory grand juror appointed to conduct an inquiry into professional gambling and other criminal activity in Torrington. The first investigatory grand juror, the Honorable John D. Brennan, was appointed by the chief court administrator on January 13, 1984, pursuant to General Statutes § 54-47. After completing his investigation, Judge Brennan filed a report on October 11, 1984, with the Superior Court for the judicial district of Hartford-New Britain at Hartford.

[3] Public Acts 1985, No. 85-611, has been codified in General Statutes §§ 54-47a through 54-47h, which provide:

"Sec. 54-47a. COMPELLING TESTIMONY OF WITNESS. IMMUNITY FROM PROSECUTION. (a) Whenever in the judgment of the chief state's attorney, a state's attorney or the deputy chief state's attorney, the testimony of any witness or the production of books, papers or other evidence of any witness (1) in any criminal proceeding involving narcotics, arson, bribery, gambling, election law violations, felonious crimes of violence or any violation which is an offense under the provisions of title 25, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury as provided in sections 54-47b to 54-47g, inclusive, is necessary to the public interest, the chief state's attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such

case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence."

"Sec. 54-47b. INVESTIGATORY GRAND JURY. DEFINITIONS. For the purposes of sections 54-47a to 54-47h, inclusive:

"(1) 'Applicant' means any judge of the superior court, appellate court or supreme court, the chief state's attorney or a state's attorney who makes an application to a panel of judges for an investigation into the commission of a crime or crimes.

"(2) 'Crime or crimes' means (A) any crime or crimes involving corruption in the executive, legislative or judicial branch of state government or in the government of any political subdivision of the state, (B) fraud by a vendor of goods or services in the medical assistance program under Title XIX of the Social Security Act Amendments of 1965, as amended, (C) any violation of chapter 949c and (D) any other class A, B or C felony for which the chief state's attorney demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed.

"(3) 'Investigatory grand jury' means a judge, constitutional state referee or any three judges of the superior court, other than a judge designated by the chief justice to serve on the panel, appointed by the chief court administrator to conduct an investigation into the commission of a crime or crimes.

"(4) 'Panel of judges' or 'panel' means a panel of three superior court judges designated by the chief justice of the supreme court from time to time to receive applications for investigations into the commission of crimes in accordance with the provisions of sections 54-47a to 54-47h, inclusive, one of whom may be the chief court administrator."

"Sec. 54-47c. APPLICATION FOR INVESTIGATION INTO COMMISSION OF CRIME. (a) Any judge of the superior court, appellate court or supreme court, the chief state's attorney or a state's attorney may make application to a panel of judges for an investigation into the commission of a crime or crimes whenever such applicant has reasonable belief that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed.

"(b) Each application for an investigation into the commission of a crime

## been authorized to pursue his inquiry, and instituted

or crimes shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information: (1) The identity of the applicant and his authority to make such application; (2) a full and complete statement of the facts and circumstances relied upon by the applicant to justify his reasonable belief that the investigation will lead to a finding of probable cause that a crime or crimes have been committed; (3) a full and complete statement of the facts concerning all previous applications known to the applicant, made to any panel of judges, for investigation of any one or more of the same criminal offenses involving any of the same persons specified in the application, including the action taken by the panel on each such application; and (4) such additional testimony or documentary evidence in support of facts in the application as the panel of judges may require. If the application is made by the chief state's attorney or a state's attorney, it shall also include a full and complete statement of facts showing that other normal investigative procedures with respect to the alleged crime have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous to employ."

"Sec. 54-47d. APPOINTMENT OF INVESTIGATORY GRAND JURY. DURATION AND SCOPE OF INVESTIGATION. (a) If the panel approves the application and orders and investigation into the commission of a crime or crimes, the chief court administrator shall (1) appoint an investigatory grand jury to conduct the investigation and (2) designate the court of the judicial district where any motions to quash and any contempt proceedings shall be heard and conducted and any findings and records of the investigation shall be filed.

"(b) Each order authorizing the investigation into the commission of a crime or crimes by the panel shall specify: (1) The date of issuance of the order, (2) the period of time within which the investigation is to be conducted, provided in no event shall the investigation be longer than six months from the date the chief court administrator appoints the investigatory grand jury to conduct the investigation, unless an application for an extension of time is filed and granted pursuant to subsection (c) of this section, (3) the scope of the investigation, and (4) its reasons for finding that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed. The panel shall retain a copy of the order and the original application and shall transmit to the investigatory grand jury, appointed pursuant to subsection (a) of this section, the original order and a copy of the application filed with the panel.

"(c) The investigatory grand jury may make an application to the panel of judges for an extension of time within which to conduct its investigation or for an amendment to the scope of its investigation. The application for extension or amendment shall set forth the reasons for the necessity of such extension or amendment and, in addition, shall contain the find-

far-reaching procedural reforms of the investigatory

ings thus far made. No more than two extensions or amendments of an order may be granted by the issuing panel. The period of any extension shall be no longer than the panel deems necessary to achieve the purposes for which it was granted and in no event shall any extension be for a period longer than six months."

"Sec. 54-47e. SEALING OF ORDER AND APPLICATION. INVESTIGATION CONDUCTED IN PRIVATE. Any order authorizing the investigation into the commission of a crime or crimes and any application filed with the panel pursuant to section 54-47c or subsection (c) of section 54-47d shall be sealed. Any investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may disclose the fact that any matter has been referred for an investigation by a grand jury and may order the investigation or any portion thereof to be public when such disclosure or order is deemed by the panel to be in the public interest."

"Sec. 54-47f. CONDUCT OF INVESTIGATION. TESTIMONY OF WITNESSES. (a) The investigatory grand jury, in conducting the investigation, may (1) seek the assistance of the chief state's attorney or state's attorney who filed the application, or his designee, (2) appoint an attorney to provide assistance if a judge of the superior court, appellate court or supreme court filed the application or (3) appoint any other attorney to provide assistance when necessary in the interest of justice.

"(b) The attendance of witnesses and the production of documents at such investigations may be compelled by subpoena, signed by any official authorized to issue such process.

"(c) If any witness properly summoned fails to appear or to produce any documents included in the subpoena, or if he fails to answer any proper question, the investigatory grand jury conducting the investigation may report the matter to the state's attorney for the judicial district which has been designated in subsection (a) of section 54-47d unless such state's attorney is the applicant or has been appointed to assist in such investigation, in which case the investigatory grand jury shall report the matter to the chief state's attorney, and such state's attorney or chief state's attorney, as the case may be, may file a complaint setting forth the facts at any criminal session of the superior court in such judicial district. The court shall thereupon issue a citation to the witness to appear before the court and show cause why he should not be punished as for a contempt, and if, after hearing, the court finds that he failed to appear without due cause or failed to produce any document properly to be presented to the investigatory grand jury or failed to answer any proper question in the course of the investigation, it may punish him as it might a witness failing to appear, to produce a document properly to be considered or to answer a proper question before the court.

"(d) Witnesses may be examined by the investigatory grand jury conducting the investigation or by any attorney or attorneys appointed by such investigatory grand jury for such purpose. At the hearing, the official con-

grand jury system.[4] The new act substituted, as authority for the appointment of a grand jury, the approval

ducting the investigation shall inform the witness that he has the right to have counsel present and to consult with such counsel.

"(e) The official conducting the investigation shall inform any witness who is a target of the investigation that he is a target and shall advise him that he has the right under the constitution of the United States and the constitution of Connecticut not to be compelled to be a witness, or to give evidence, against himself.

"(f) Any attorney appointed to assist in conducting the investigation shall disclose to the investigatory grand jury any exculpatory information or material in his possession, custody or control concerning any person who is a target of the investigation.

"(g) An official stenographer of the superior court or his assistant shall record any testimony taken at the investigation."

"Sec. 54-47g. FINDING AND RECORD OF INVESTIGATION. ACCESS TO TESTIMONY. (a) Within sixty days of the conclusion of the investigation, the investigatory grand jury conducting such investigation shall file its finding, and the stenographer shall file any record of the investigation, with the court of the judicial district designated in subsection (a) of section 54-47d. Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed. The finding and record of the investigation shall be sealed, provided the panel, by a majority vote, may disclose such finding and record when such disclosure is deemed by the panel to be in the public interest.

"(b) Any witness, upon request, may have access at all reasonable times to the record of his own testimony unless the administrative judge or his designee finds after a hearing and for good cause shown that it is not in the best interest of justice to grant the witness access to his testimony.

"(c) A person accused of a crime as a result of the investigation shall be permitted to have access, at all reasonable times, to the record of his own testimony."

"Sec. 54-47h. REPORT. In January of each year, the panel of judges appointed pursuant to section 54-47b shall report to the chief court administrator, who shall in turn report to the chief justice, governor and general assembly, the following information with respect to applications made during the preceding calendar year: (1) The number of applications for an investigation into the commission of a crime or crimes filed with the panel; (2) the number of applications approved by the panel; and (3) the number of applications approved for extensions of time or amendments to the order."

[4] Public Acts 1985, No. 85-611, also established a number of safeguards for witnesses that might well be described as substantive, not procedural. Those safeguards include, for example, the constitutional right against self-incrimination and the right to have counsel present during grand jury proceedings. General Statutes § 54-47f (d) and (e). These provisions are not

of a panel of three Superior Court judges, whereas under the prior law an applicant could obtain the requisite permission from the Superior Court or from the chief court administrator. Under the new act, but not under the old, an applicant requesting the appointment of an investigatory grand jury must demonstrate a reasonable belief that there is probable cause to believe that crimes have been committed. Furthermore, the new act describes in detail the information that must be furnished in the application, including the identity of the applicant and his authority to make the application, the facts and circumstances that justify his reasonable belief that an investigation will lead to a finding of probable cause, and any additional facts and evidence the panel may require to evaluate the application. The act also limits the duration of authorized grand juries to six months, subject to express but limited extension, to avoid the continuation of protracted and indefinite grand jury investigations. The grand jury investigation conducted by Judge DeMayo complied with none of these procedural requirements.

Because of the enactment of P.A. No. 85-611, the trial court granted the defendant's motion to suppress

at issue in this case because the defendant's claims are not premised on alleged violations of any of these safeguards.

Representative Christopher Shays explained the purpose of the act as follows: "And it seems to me that there is a need to change the one-man grand jury system in terms of all the mechanisms that are in the bill such as having to go before a three-member panel; such as having a grand jury only last for six months and then have to renew the request; such as being required to file your report of whether there's probable cause within 60 days after the grand jury has ended. . . . Presently grand juries once impaneled go on for years and years and years. That's been one of the areas of abuses and that's where I think this bill addresses. Another area that its addressed where we had abuse. You previously could go to almost any judge and ask for a one-man grand jury so that the Chief Court Administrator didn't know how many grand juries existed throughout the state. . . . The protection from abuse is that [the] panel of 3 judges who will have to give permission before you impanel a one-man grand jury. . . . The protections are in the bill." 28 H.R. Proc., Pt. 17, 1985 Sess., pp. 6028–29, 6061, 6064.

information obtained by the grand jury after October 1, 1985. The trial court relied on the legislative history of the new act, the absence of a grandfather clause that would preserve the authority of preexisting grand juries, and the explicit repeal of § 54-47, for its conclusion that investigatory grand juries appointed under the prior statute were not authorized to conduct further inquiry after the effective date of the new act. Accordingly, the court ordered the suppression of any information obtained by the grand jury after October 1, 1985, but declined to invalidate the grand jury's interim report or to dismiss the charges pending against the defendant.

Subsequent to the trial court's ruling, the legislature enacted P.A. No. 86-317, entitled "An Act Concerning Investigatory Grand Juries," which became effective as of May 8, 1986.[5] That act provides, in relevant part, that the authority of any investigatory grand jury

---

[5] Public Acts 1986, No. 86-317, has been codified in General Statutes § 54-47i, which provides:

"Sec. 54-47i. AUTHORITY OF INVESTIGATION ORDERED PRIOR TO OCTOBER 1, 1985. (a) The authority of any judge, state referee or three judges of the superior court to conduct an inquiry to determine whether or not there is probable cause to believe that a crime or crimes have been committed, where such inquiry was ordered prior to October 1, 1985, in accordance with section 54-47 of the general statutes, revision of 1958, revised to January 1, 1985, shall continue until the conclusion of such inquiry and a final report has been filed with the court pursuant to said section, and any action taken or caused to be taken by such judge, state referee or three judges of the superior court pursuant to such inquiry, otherwise valid, shall be valid notwithstanding that such action was or is taken or caused to be taken on or after October 1, 1985, and any evidence obtained pursuant to such inquiry, otherwise admissible, shall be admissible in any criminal prosecution of a person accused as a result of such inquiry notwithstanding that such evidence was or is obtained on or after October 1, 1985.

"(b) The appointment of any judge or referee after October 1, 1985, to replace a judge or referee ordered to conduct an inquiry to determine whether or not probable cause to believe that a crime or crimes have been committed, where such inquiry was ordered prior to October 1, 1985, in accordance with section 54-47 of the general statutes, revised to Janu-

to conduct an inquiry initiated under § 54-47 "shall continue until the conclusion of the inquiry and [until] a final report has been filed." General Statutes § 54-47i (a). The act further validates "any action taken" and "any evidence obtained," on or after October 1, 1985, pursuant to the authority previously conferred upon a grand jury under § 54-47.

Armed with this new statute, the state filed a motion to reargue the trial court's earlier ruling. It maintained that the 1986 statute had clarified the legislature's original intention, in P.A. No. 85-611, to preserve the validity of grand juries duly constituted under § 54-47 prior to October 1, 1985. The trial court, after a hearing, reaffirmed its prior decision. The court concluded that the retroactive application of P.A. No. 86-317 to its earlier ruling would deprive the defendant of substantive rights conferred upon him by P.A. No. 85-611, in violation of the constitutional prohibition against ex post facto laws. U.S. Const., art. I, § 9.

In its appeal from that ruling, the state claims that: (1) the legislature's enactment of P.A. No. 85-611 did not terminate the authority of investigatory grand juries properly appointed under § 54-47; (2) the legislature's enactment of P.A. No. 86-317 clarified that it had not intended to terminate the authority of duly constituted grand juries when it enacted P.A. No. 85-611; (3) the defendant has no standing to challenge the admissibility of grand jury evidence at his trial; and (4) the defendant may not rely on the exclusionary rule to challenge the admissibility of evidence at his trial. We will address jointly the state's first two claims. Because we resolve those claims in favor of the state, we need not consider its remaining two claims.

ary 1, 1985, shall not be deemed to create a new inquiry and the authority of such judge so appointed shall continue as provided in subsection (a) of this section."

In determining the effect of P.A. No. 85-611 on the authority of preexisting investigatory grand juries, we are guided by well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. If the language of a statute is plain and unambiguous, we need not look beyond the statute because we assume that the language expresses the intention of the legislature. *Rhodes* v. *Hartford,* supra; *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981). When we are faced with ambiguity in a statute, however, we turn for interpretive guidance to its legislative history, the circumstances surrounding its enactment, and the purpose the statute is to serve. *Rhodes* v. *Hartford,* supra; *State* v. *Kozlowski,* supra; *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985).

The defendant contends that the plain language of P.A. No. 85-611 explicitly evidences the legislature's intent to revoke, as of October 1, 1985, the authority of investigatory grand juries appointed under § 54-47. His argument relies exclusively on § 9 of the act, which provides: "Section 54-47 of the general statute is *repealed.*" (Emphasis added.) In his view, the use of the word "repeal" not only signifies the repeal of § 54-47 as authority for the impaneling of future grand juries, but also mandates the immediate termination of the authority of preexisting grand juries duly appointed under § 54-47. To ascribe so definitive a meaning to the term "repeal" is, however, inconsistent with well understood patterns of legislative usage.

We recently noted, in *State* v. *Kozlowski,* supra, 675, that use of the word "repeal" reflects no more than the characteristic practice of the legislature of "cast[ing] acts which alter language within existing statutory subsections in the form of repeal and substitution," and "reserving the label of amendment for acts which add entirely new subsections." Standing by itself, the fact that the legislature "repealed" § 54-47 does not persuade us that the legislature intended the revocation of the authority of preexisting grand juries.

None of the other express terms of P.A. No. 85-611 supports the defendant's argument that the statute plainly terminates the authority of grand juries duly constituted before October 1, 1985. It bears emphasis that the question of the effect of the 1985 enactment is a matter of statutory construction and not of legislative power. The legislature undoubtedly had plenary power to apply the procedural reforms of the 1985 act retroactively. We have frequently recognized "the right of the legislature retroactively to make legal and regular that which was previously illegal and irregular, provided that vested rights are not unjustly abrogated." *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 572, 440 A.2d 220 (1981); *C.S.E.A., Inc.* v. *Connecticut Personnel Policy Board,* 165 Conn. 448, 454–55, 334 A.2d 909 (1973); *Carvette* v. *Marion Power Shovel Co.,* 157 Conn. 92, 95–96, 249 A.2d 58 (1968). The problem posed by the 1985 act is that the statute is conspicuously silent about whether the legislature intended to exercise its power to invalidate preexisting grand juries. Confronted with this latent ambiguity, we must look beyond the words of the statute to determine the legislature's intent. *State* v. *Kozlowski,* supra, 674; *Tramontano* v. *Dilieto,* 192 Conn. 426, 433–34, 472 A.2d 768 (1984); see 2A J. Sutherland, supra, § 46.07, p. 110.

The state urges us to rely on General Statutes § 1-1 (u) in interpreting the scope of the 1985 act. General Statutes § 1-1 (u), commonly referred to as the saving clause for newly enacted legislation, provides that "[t]he passage or repeal of an act shall not affect any *action* then pending." (Emphasis added.) The state argues that the legislature assumed, because of this statutory saving clause, that it did not need to make explicit its intent that the act would have no impact on pending grand jury investigations. As the defendant correctly points out, however, the statutory saving clause is inapplicable in the present circumstances because the proceedings of an investigatory grand jury do not fall within the definition of an "action" under § 1-1 (u). This court has defined the term "action" as the lawful demand of one's right in a court of justice for the purpose of obtaining whatever redress the law provides. *In re Investigation of the Grand Juror,* 188 Conn. 601, 606, 452 A.2d 935 (1982); *Waterbury Blank Book Mfg. Co.* v. *Hurlburt,* 73 Conn. 715, 717, 49 A. 198 (1901). An investigatory grand jury proceeding does not provide a forum for the assertion of a legal right. It is not an adversary proceeding in which the parties present their respective positions and have an opportunity to examine and cross-examine witnesses. Furthermore, an investigatory grand jury has no authority to try, condemn or accuse parties under investigation. *In re Investigation of the Grand Juror,* supra, 604–605; *State* v. *Moynahan,* 164 Conn. 560, 565, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). Because the sole function of such a grand jury is to inquire into criminal activity and report its findings to the court, its proceedings do not constitute an "action" within § 1-1 (u). *In re Investigation of the Grand Juror,* supra, 604. The statutory saving clause therefore cannot be read to preserve the authority of preexisting grand juries.

Given the inapplicability of the statutory saving clause, we would face an arduous interpretative task if we were confronted only with the absence of express terms, in the text of P.A. No. 85-611, either validating or invalidating the continuing authority of preexisting grand juries. Our inquiry into the legislative intent of P.A. No. 85-611 is, however, facilitated by unequivocal legislative action in 1986. The terms of P.A. No. 86-317 explicitly provide that the inquiry of an investigatory grand jury "ordered prior to October 1, 1985, in accordance with section 54-47 of the general statutes, revision of 1958, revised to January 1, 1985, shall continue until the conclusion of such inquiry and a final report has been filed with the court . . . ." P.A. No. 86-317 poses no great difficulty of interpretation. It is clear what the legislature intended, in 1986, to do. What is debatable is whether the legislature then had the power to effectuate its intent.

The state argues that P.A. No. 86-317 serves to clarify the legislature's original intention in enacting P.A. No. 85-611, and that it was well within the prerogative of the legislature to enact such a clarifying act. The defendant maintains, to the contrary, that P.A. No. 86-317 is a curative act that unconstitutionally attempts to revitalize the authority of grand juries that were divested, by P.A. No. 85-611, of their power to pursue further investigations. We agree with the state that P.A. No. 86-317 is clarifying rather than curative legislation.

Our cases have drawn a clear distinction between curative and clarifying legislation. Although a curative act may validate any past action that the legislature might originally have authorized, we have held that "[c]urative acts cannot cure a want of authority to act at all." *Montgomery* v. *Branford,* 107 Conn. 697, 705, 142 A.2d 574 (1928); *McAdams* v. *Barbieri,* 143 Conn. 405, 420, 123 A.2d 182 (1956); 2 J. Sutherland, supra,

§ 41.11. By contrast, a clarifying act, which "in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); *State* v. *One 1977 Buick Automobile,* 196 Conn. 471, 479, 493 A.2d 874 (1985); *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 540, 489 A.2d 363 (1985); *Neyland* v. *Board of Education,* 195 Conn. 174, 180, 487 A.2d 181 (1985); *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980); see 1A J. Sutherland, supra, §§ 22.31, 22.35.

To the extent that legislative history can illuminate whether an act is curative or clarifying legislation, the legislative history of P.A. No. 86-317 demonstrates that the legislature intended that act to clarify its original intent that grand juries duly constituted before October 1, 1985, would be authorized to finish their inquiries without having to comply with the 1985 act. Senator Richard B. Johnston, cochairman of the Judiciary Committee and cosponsor of the act, explained: "Last year, the general assembly, effective October 1, 1985, passed Public Act 85-611 . . . [i]t was not at that time our intent to terminate through the passage of that legislation any then initiated and ongoing grand jury investigations." 29 S. Proc., Pt. 7, 1986 Sess., p. 2400. Senator Johnston added: "[T]his legislation before us really, in essence, provides a clarification to that legislative intent, that is that those grand juries that were initiated prior to the passage of the Public Act last year were lawfully constituted after the passage of that legislation and legitimately ongoing. It was—when Judge Pickett speaks in his ruling on the motion, he speaks of that there was no grandfathering of any then initiated grand jury investigations. Well, I recall thinking . . . that the grandfathering of any already instituted actions [was] provided in other passages of the Connecticut general statutes . . . ." Id., 2400–2401.

Nothing in the reported legislative history indicates that the legislature intended in 1986 to revive grand juries whose authority had been terminated by the 1985 act. The legislature intended instead to exercise its ongoing power to clarify the law as it existed under the 1985 act.

The legislature could not, even by extensive protestations of legislative intent, convert an act that is truly curative into one that is effectively clarifying. In this case, however, there is no reason not to accept the legislative history of P.A. No. 86-317 at face value. In enacting P.A. No. 85-611, the legislature failed to address its effect on preexisting grand juries. Once litigation brought that ambiguity to light, the legislature acted to remove any doubt about its earlier intentions. Its action in 1986 therefore invokes the principle of statutory construction that "[i]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ." 1A J. Sutherland, supra, § 22.31. Even though the legislative clarification was prompted by a judicial decision that the legislature deemed mistaken, such a clarification does not constitute an invasion of judicial authority. Like legislators, judges are fallible. The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we had previously interpreted a statute to confer. *Circle Lanes of Fairfield, Inc.* v. *Fay*, supra, 540–41; *Neyland* v. *Board of Education*, supra, 180–81; *Lee* v. *Board of Education*, supra, 75; *Tax Commissioner* v. *Estate of Bissell*, supra, 245.

Our conclusion that P.A. No. 86-317 is to be given effect as clarifying legislation finds support in the presumption that the legislature intended to accomplish a reasonable and rational result, rather than the "difficult and possibly bizarre" result of terminating sev-

eral ongoing grand jury investigations sub silentio. *Maciejewski* v. *West Hartford,* 194 Conn. 139, 152, 480 A.2d 519 (1984); *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); *State* v. *Delafose,* 185 Conn. 517, 523, 441 A.2d 158 (1981); *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980). The legislature was of course empowered to decide, in 1985, that in light of the wide perception of serious abuses in the previous investigatory grand jury system, it was urgent to implement reform measures immediately, even at the cost of disrupting the ongoing proceedings of preexisting grand juries. The legislature might have determined that public policy required the dismantling of all ongoing grand juries, despite the risk of resultant delay in the completion of their assignments and the possible disruption of investigative inquiries.[6] It is, however, highly unlikely that the legislature would have undertaken so troubling a choice—between the benefits of reform and the costs of premature termination of preexisting investigations—without making that decision expressly. We conclude that legislative silence on this matter is indicative of legislative intent that P.A. No. 85-611 should operate to safeguard against abuses in the appointment and operation of future investigatory grand juries without terminating the authority of preexisting grand juries.

Having concluded that P.A. No. 86-317 is clarifying legislation, we have removed the necessary predicate for the defendant's claim that the 1986 act retroactively and hence unconstitutionally deprived him of vested rights. The defendant's argument is that P.A. No. 85-611 conferred substantive rights upon him that the legislature could not revoke in 1986 without violating

---

[6] For purposes of this appeal, we may take judicial notice of the assertion by the state in its brief and at oral argument before this court that there are presently three grand jury investigations pending in Connecticut pursuant to General Statutes § 54-47.

his constitutional rights to due process and to protection against ex post facto laws.[7] These substantive rights arose, according to the defendant, because the effect of P.A. No. 85-611 was to terminate the investigatory authority of Judge DeMayo's grand jury. It is essential to this argument that we agree with the defendant's assertion that the 1985 act conferred upon him the right to have further grand jury investigations conducted according to the ground rules therein established for future grand juries. In light of the 1986 act, we have concluded to the contrary. Since P.A. No. 85-611 conferred no rights, vested or otherwise, upon the defendant in 1985, he cannot have been deprived of vested rights in 1986. *Neyland* v. *Board of Education,* supra, 181; accord *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 263, 348 A.2d 658 (1974). His claim that his constitutional rights have been violated is therefore without merit.

There is error, the judgment is set aside and the case is remanded with direction for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[7] The fourteenth amendment to the United States constitution provides in part: "Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law . . . ."

Article one, § 9, of the United States constitution provides: "No bill of Attainder or ex post facto Law shall be passed."

Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."