JOHN A. CONNELLY, STATE'S ATTORNEY *v.*
JOHN DOE, M.D.
(13707)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued October 5—decision released November 28, 1989

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, was *David E. Sullivan,* assistant state's attorney, for the appellant (plaintiff).

*Richard L. Albrecht,* with whom, on the brief, was *Jeremiah R. Dineen III,* for the appellee (defendant).

COVELLO, J. This appeal arises out of proceedings before a one-man investigatory grand jury authorized by General Statutes (Rev. to 1983) § 54-47 (b).[1] The dis-

---

[1] General Statutes (Rev. to 1983) § 54-47 (b) provided: "The chief state's attorney and the deputy chief state's attorney may also apply to the chief court administrator for an order that an inquiry be made to determine whether or not there is probable cause to believe that a crime or crimes

positive issue is whether the investigatory grand jury in question was limited, by the order that empaneled it, to investigate only those events that predated its empaneling. Because the plain language of both the court order and the relevant enabling statute authorized investigation into past conduct only, we conclude that the trial court did not err in limiting the scope of the grand jury inquiry to alleged criminal activity that predated its empanelment.

The relevant facts are not in dispute. On November 18, 1983, pursuant to General Statutes (Rev. to 1983) § 54-47, the chief court administrator appointed Honorable James F. Henebry to investigate fraud, corruption and patient abuse involving medicaid providers.[2] The order creating the grand jury stated "that an inquiry be made to determine whether there is probable cause to believe that a crime or crimes within the jurisdiction of the superior court *have been committed* . . . ." (Emphasis added.) In November, 1987, four years later, the grand jury subpoenaed the defendant,[3] a psychiatrist and medicaid provider, to testify before it and to produce certain records pertaining to medicaid recipients for the period from January 1, 1985, through September 30, 1987. The par-

have been committed. If the chief court administrator is satisfied from the application and any other papers or evidence submitted in support thereof that the administration of justice requires such an inquiry, he shall order that it be made and shall appoint a judge, a state referee or any three judges of the superior court to conduct the inquiry, with the assistance of the chief state's attorney, deputy chief state's attorney or any state's attorney or assistant state's attorney."

[2] This grand jury is a continuation of the investigatory inquiry that was first convened in September, 1979. It is currently the only one-man grand jury operating under the authority of General Statutes (Rev. to 1983) § 54-47, which has since been repealed. Judge Henebry was appointed to relieve Judge Joseph A. Adorno.

[3] On January 19, 1988, the trial court sealed the file in the instant proceeding in order to protect the secrecy of the grand jury and the identity and reputation of the defendant.

ties agree that none of the information sought dealt with any alleged criminal acts that occurred prior to the November 18, 1983 empaneling of the grand jury. The defendant refused to comply with the subpoena. On January 20, 1988, the plaintiff, pursuant to General Statutes (Rev. to 1983) § 54-47 (e), obtained a citation directing the defendant to appear and show cause why he should not be found in contempt.[4]

At the hearing on the contempt citation, the defendant moved to quash the subpoena and to dismiss the contempt action, claiming, inter alia, that the grand jury was not lawfully empowered to investigate his activities for the period in question (January 1, 1985, through September 30, 1987). On June 8, 1988, by memorandum of decision, the trial court granted both of the defendant's motions on the ground that the grand jury was limited, by the order that created it, to investigating events that predated its empaneling. The trial court subsequently granted the state permission to appeal to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.[5]

---

[4] General Statutes (Rev. to 1983) § 54-47 (e) provided: "If any witness properly summoned fails to appear or to produce any documents included in the subpoena, or if he fails to answer any proper question, the judge, referee or judges conducting the inquiry may report the matter to the state's attorney for the judicial district wherein the investigation is being conducted and such state's attorney may file a complaint setting forth the facts at any criminal session of the superior court in such judicial district. The court shall thereupon issue a citation to the witness to appear before said court and show cause why he should not be punished as for a contempt, and if, after hearing, the court finds that he failed to appear without due cause or failed to produce any document properly to be presented to the judge, state referee or judges conducting the investigation or failed to answer any proper question in the course of the investigation, it may punish him as it might a witness failing to appear, to produce a document properly to be considered or to answer a proper question before the court."

[5] The plaintiff state of Connecticut (named as John A. Connelly, state's attorney for the judicial district of Waterbury) moved for permission to appeal on August 16, 1988, in reliance upon General Statutes § 54-96, which

Indicting grand juries have long existed at common law, and this court has held that the state's attorney in such a setting has both common law and statutory authority to subpoena defendants to testify before the grand jury. See, e.g., *State* v. *Morrill,* 197 Conn. 507, 514, 498 A.2d 76 (1985). In comparison, the one-man investigatory grand jury is purely a creature of statute, authorized pursuant to General Statutes (Rev. to 1983) § 54-47, as amended. See *State* v. *Blasko,* 202 Conn. 541, 545–551, 553–55, 522 A.2d 753 (1987); *In re Investigation of the Grand Juror,* 4 Conn. App. 544, 549–50, 556, 495 A.2d 1098 (1985), appeal dismissed, 203 Conn. 1, 522 A.2d 1228 (1987). The investigatory grand jury has broad statutory authority to inquire into criminal activity and to report its findings to the court for possible prosecution of those responsible for such activity. *In re Final Grand Jury Report Concerning the Torrington Police Department,* 197 Conn. 698, 707, 501 A.2d 377 (1985); *In re Investigation of the Grand Juror into the Bethel Police Department,* 188 Conn. 601, 603, 452 A.2d 935 (1983); see also *State* v. *Blasko,* supra, 555.

Because the investigatory grand jury has no common law power, its powers necessarily are limited by the

provides: "APPEALS BY THE STATE FROM SUPERIOR COURT IN CRIMINAL CASES. Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused." On August 22, 1988, the trial court granted the motion "if in fact permission is necessary." Subsequently, pursuant to Practice Book § 4056, the defendant moved this court to dismiss the state's appeal for failure to file appeal papers within the allotted time. On January 17, 1989, this court denied the defendant's motion to dismiss the state's appeal. The defendant raises the claim in his brief that the state has failed to file this appeal in timely fashion and thus this court lacks jurisdiction to hear it. Although we must address this jurisdictional claim, it is without merit because the time limited for filing an appeal is not jurisdictional. *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 170–171, 363 A.2d 22 (1975); *LaReau* v. *Reincke,* 158 Conn. 486, 492–96, 264 A.2d 576 (1969).

language of the enabling statute which authorizes its creation. General Statutes § 54-47 was enacted in 1941 as § 889f (1941 act).[6] The pertinent language of the stat-

[6] General Statutes (1941 Sup.) § 889f provided: "INVESTIGATIONS INTO COMMISSION OF CRIME. Whenever it shall appear to the superior court in any county that the due administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed within the county, said court may order an inquiry to be made into the matter, to be conducted before any judge of said court or a state referee. Such inquiry shall be conducted in public or private as said court shall order. The attendance of witnesses and the production of documents at such inquiry may be compelled by subpoena, signed by any official authorized to issue such process. Should any witness properly summoned fail to appear or to produce any documents included in such subpoena, or should he fail to answer any proper question, the judge or referee conducting such inquiry may punish him for contempt to the same extent as in the case of a witness before a court. Witnesses may be examined by the judge or state referee conducting the inquiry or by the state's attorney or by any other attorney or attorneys appointed by the court for such purpose. The official stenographer of said court or his assistant shall record any testimony so taken. At the conclusion of such inquiry the judge or referee conducting the same shall file with the court a report and the court shall direct whether, and to what extent, such report shall be made available to the public or interested parties; and any transcript of testimony taken at such inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report; provided that any person accused of crime as a result of such inquiry shall have access at all reasonable times to the transcript of his own testimony given by him in such inquiry."

The 1941 statute was amended at numerous times until it evolved into the statute in effect at the time Judge Henebry's grand jury was empaneled, General Statutes (Rev. to 1983) § 54-47 (1983 act). The legislature later enacted Public Acts 1985, No. 85-611, now codified as General Statutes § 54-47a et seq. (1985 act), to institute far-reaching procedural reforms of the investigatory grand jury system. See *State* v. *Blasko,* 202 Conn. 541, 547–50, 522 A.2d 753 (1987). The 1985 act repealed the 1983 act, in part to eliminate the abuses allegedly inherent in the so-called "perpetual" one-man grand jury. One of these reforms was to impose a six month time limitation on the duration of the grand jury, subject to a maximum of two six month extensions. General Statutes § 54-47d (c). A potential for the excessive duration of the one-man grand jury under the 1983 act was perceived as an abuse that the legislature intended to cure by the new act. See 28 H.R. Proc., Pt. 17, 1985 Sess., pp. 6061, 6064, statements of Representative Christopher Shays, May 15, 1985. The legislature subsequently enacted Public Acts 1986, No. 86-317, codified as General Statutes § 54-47i, which

ute describing the scope of the investigation remained unchanged until § 54-47 was repealed in 1985.[7] In 1983, the act authorized the grand jury to conduct an "investigation to determine whether or not there is probable cause to believe that a crime or crimes *have been committed* within the judicial district . . . . " (Emphasis added.) General Statutes (Rev. to 1983) § 54-47 (a).

The unequivocal and persistent use of the past tense in the enabling legislation manifests a clear legislative intent that the investigatory grand jury is limited in scope to investigation of past conduct only. The statute contains no language authorizing the investigation of "ongoing" or "continuing" activity. Had the legislature intended the investigatory grand jury to have continuing authority as to the scope of its inquiry, it could have provided so expressly, as other state legislatures have done. See, e.g., *Commonwealth* v. *Bradfield,* 352 Pa. Super. 466, 508 A.2d 568 (1986).[8] Our conclusion is further supported by the legislature's

clarified the legislative intent not to repeal or terminate any one-man investigatory grand jury that had been empaneled prior to the 1985 act. *State* v. *Blasko,* supra, 558–59.

Despite the number of changes that the 1941 act had undergone prior to its repeal in 1985, the language defining the scope of the investigation has remained the same, directing the grand jury to perform an "investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed within the county . . . . " General Statutes (1941 Sup.) § 889f. The interpretation of the statute as urged by the state would allow, as the last vestige of the 1983 act, Judge Henebry to continue his investigation until the end of his judicial life. Grand juries convened prior to October 1, 1985, " 'shall continue until the conclusion of the inquiry and [until] a final report has been filed.' General Statutes § 54-47i (a)." *State* v. *Blasko,* supra, 551–52. In the instant case it is entirely conceivable that no final report ever could be filed, since before one investigation is concluded, another appears or reappears.

[7] See footnote 6, supra.

[8] In *Commonwealth* v. *Bradfield,* 352 Pa. Super. 466, 475–76, 508 A.2d 568 (1986), a grand jury was empaneled under Pennsylvania state law to investigate organized crime, clearly defined in the statute as "any *continuing* criminal conspiracy. . . ." (Emphasis added.) 42 Pa. Cons. Stat. § 4542 (Purdon 1981). *Bradfield* is not only distinguishable on the facts from the

enactment of the 1985 act, which sought to preclude any possibility that an investigative grand jury empaneled thereafter could be deemed to have authority of an ongoing or continuous nature.[9]

The relevant language of both the authorization order and the enabling statute is identical.[10] As General Statutes (Rev. to 1983) § 54-47 provided, the order does not direct that an investigation be conducted into criminal activity occurring subsequent to November 18, 1983, but rather "to determine whether there is probable cause to believe that a crime or crimes within the jurisdiction of the Superior Court *have been committed* . . . ." (Emphasis added.)

---

instant case, but it also supports our conclusion that had the legislature intended one-man grand jury investigations to be continuous in nature, it would have stated so in express terms.

[9] See footnote 6, supra.

[10] General Statutes (Rev. to 1983) § 54-47 provided in pertinent part: "INVESTIGATIONS INTO COMMISSION OF CRIME. (a) Whenever it appears to the superior court for any judicial district that the administration of justice requires an investigation *to determine whether or not there is probable cause to believe that a crime or crimes have been committed within the judicial district,* said court may order an inquiry to be made into the matter, to be conducted before any judge, state referee, or any three judges of said court designated by it.

"(b) The chief state's attorney and the deputy chief state's attorney may also apply to the chief court administrator for an order that an inquiry be made *to determine whether or not there is probable cause to believe that a crime or crimes have been committed.* If the chief court administrator is satisfied from the application and any other papers or evidence submitted in support thereof that the administration of justice requires such an inquiry, he shall order that it be made and shall appoint a judge, a state referee or any three judges of the superior court to conduct the inquiry, with the assistance of the chief state's attorney, deputy chief state's attorney or any state's attorney or assistant state's attorney." (Emphasis added.) Similarly, the November 18, 1983 court order authorizing Judge Henebry's one-man grand jury provides in pertinent part: "[T]hat an inquiry be made *to determine whether there is probable cause to believe that a crime or crimes within the jurisdiction of the Superior Court have been committed* . . . ." (Emphasis added.)

In the instant case both the enabling legislation and the court order are clear and unequivocal and cannot be extended beyond their plain meaning. See General Statutes § 1-1 (a); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985).

Criminal investigations by their nature are customarily directed at past conduct, and one-man grand jury investigations pursuant to § 54-47 are similarly retrospective. The clear and unequivocal meaning of the court order authorizing creation of Judge Henebry's investigative grand jury, issued in the past tense, is that the grand jury is limited by that order to investigating only those events that predated the order.[11]

There is no error.

In this opinion the other justices concurred.

---

[11] It is probable that the only act left to be performed by Judge Henebry's one-man grand jury is to file its final report and cease its investigation since it appears that no prosecution is possible on any pre-November 18, 1983 offenses because of the expiration of the applicable statutes of limitation. The grand jury does have the option to turn over to the state's attorney's office any information indicating criminal activity subsequent to its empaneling, or alternatively, to recommend empaneling a new grand jury to investigate such subsequent criminal activity.