## STATE OF CONNECTICUT *v.* MATTHEW RIVERA
## (SC 15917)

Callahan, C. J., and Borden, Berdon, Katz, Palmer, McDonald and Peters, Js.

Argued February 16—officially released August 17, 1999

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom were *James E. Thomas*, state's attorney, and, on the brief, *Dennis O'Connor*, senior assistant state's attorney, for the appellant (state).

*Michael A. Georgetti*, with whom, on the brief, was *Janis C. Jerman*, for the appellee (defendant).

*Opinion*

PALMER, J. In this criminal case, the state appeals, with the permission of the trial court, from that court's judgment dismissing the information, which followed the court's ruling prohibiting the state from introducing, in its case-in-chief, the testimony of the defendant, Matthew Rivera, during his appearance before an investigatory grand jury. Because we conclude that the trial court improperly precluded the state from introducing the defendant's grand jury testimony, we reverse the judgment of the trial court dismissing the information.

The following facts and procedural history are relevant to this appeal. In February, 1993, the chief state's attorney and the state's attorney in Hartford applied to the investigatory grand jury panel pursuant to General

Statutes (Rev. to 1993) § 54-47c[1] for the appointment of a grand jury to investigate possible illegal conduct by certain members of the Connecticut state police and the Hartford police department, among others. The grand jury panel approved the application and Judge Aaron Ment, then the chief court administrator, appointed Judge Arthur L. Spada, judge trial referee, to serve as the grand juror. See General Statutes (Rev. to 1993) § 54-47d.[2] The investigation began on March 29, 1993, and continued through August 16, 1994. On

[1] General Statutes (Rev. to 1993) § 54-47c provides: "Application for investigation into commission of crime. (a) Any judge of the superior court, appellate court or supreme court, the chief state's attorney or a state's attorney may make application to a panel of judges for an investigation into the commission of a crime or crimes whenever such applicant has reasonable belief that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed.

"(b) Each application for an investigation into the commission of a crime or crimes shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information: (1) The identity of the applicant and his authority to make such application; (2) a full and complete statement of the facts and circumstances relied upon by the applicant to justify his reasonable belief that the investigation will lead to a finding of probable cause that a crime or crimes have been committed; and (3) a full and complete statement of the facts concerning all previous applications known to the applicant, made to any panel of judges, for investigation of any one or more of the same criminal offenses involving any of the same persons specified in the application, including the action taken by the panel on each such application. The panel of judges may require such additional testimony or documentary evidence in support of facts in the application as it deems necessary. Such additional testimony shall be transcribed. If the application is made by the chief state's attorney or a state's attorney, it shall also include a full and complete statement of facts showing that other normal investigative procedures with respect to the alleged crime have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous to employ."

[2] General Statutes (Rev. to 1993) § 54-47d (a) provides: "If the panel approves the application and orders an investigation into the commission of a crime or crimes, the chief court administrator shall (1) appoint an investigatory grand jury to conduct the investigation and (2) designate the court location in the judicial district where any motions to quash and any contempt proceedings shall be heard and any findings and records of the investigation shall be filed."

December 13, 1993, the defendant, in response to a subpoena, appeared before the grand jury and was placed under oath by the grand juror. In the presence of senior assistant state's attorney Paul Murray (state's attorney), the grand juror conveyed the following order of secrecy to the defendant:

"The Court: . . . [I]n a few minutes . . . [the state's attorney] will be advising you as he does all the witnesses. I'm also required to advise you, as I do every witness that comes before us, [about] an order of secrecy that I'm going to place you under. It not only covers you, but every individual in this room. So any of the questions that are asked of you, the subject matter and any of the answers that you may give are protected by an order of confidentiality and secrecy. That is, no one in this room can reveal to anybody outside this room who was in this afternoon to talk to us, and no one can tell anybody outside this room what questions were asked of you and what answers you gave. So the answers you give will also be confidentially protected. Conversely, if you go out of this building or anywhere in this building and discuss with anyone the fact that you're here, who was present in the room, what questions were asked of you and what answers you gave, that would violate the order of confidentiality and this order of secrecy, and would expose you to an arrest for criminal contempt. Do you understand that?

"[The Defendant]: Yes, I do Your Honor."

After receiving an advisement of his rights from the state's attorney,[3] as required by General Statutes § 54-

---

[3] The state's attorney advised the defendant as follows:

"[State's Attorney]: . . . I'm going to read you some advice to witnesses I've directed to every single witness that's been in here, so it's not directed at you, but it's important nonetheless. First, do you understand by the oath you've taken, you have sworn to answer all the questions you will be asked truthfully?

"[The Defendant]: Yes, I do.

"[State's Attorney]: Do you understand that if you testify falsely, you are subject to arrest and prosecution for perjury, which in Connecticut is a

47f,[4] the defendant proceeded to testify. Following the

felony having a maximum penalty of five years in prison and or a maximum fine of $5,000? Do you understand that?

"[The Defendant]: Yes, I do.

"[State's Attorney]: Do you understand under the fifth amendment to the [United States] constitution, as well as under the statute which authorizes the convening of this judicial inquiry, you have the privilege to refuse to answer any question if such answer would tend to incriminate you, that is, if such answer would implicate you in the commission of a crime? Do you understand that?

"[The Defendant]: Yes, I do.

"[State's Attorney]: Do you understand if you claim your privilege under the fifth amendment, the state may apply to the Superior Court for an order directing you to testify? Do you understand that?

"[The Defendant]: Yes.

"[State's Attorney]: And that if such an order directing you to testify is granted, you must testify, but, in return, would receive immunity from prosecution as to all matters you testify about in response to questions which are asked, except false testimony. Do you understand that?

"[The Defendant]: Yes.

"[State's Attorney]: Do you understand that you have the right to be represented by counsel and have counsel present with you while you are testifying?

"[The Defendant]: Yes.

"[State's Attorney]: I would advise you—usually, at this point, I give an advice as to whether a witness is a target or just an informational witness. I have to say I would have to consider you at least a potential target of this investigation. That is to say that some information has come to our attention which gives rise to some questions directed at your conduct. I can't tell whether you've done anything wrong or not at this point. You know; I don't. So, I would ask you to search your own conscience in answering the questions. And I certainly advise you if you are answering questions, to answer each and every one of them 100 percent truthfully. If you feel that, in some way, it might incriminate you in the commission of a crime, you have the right to assert the privilege, the fifth amendment privilege or to ask for some time to get an attorney. You're the only one that knows what you've done, so I don't know whether you need to do that or not. So I ask you to think in your own mind."

[4] General Statutes § 54-47f provides in relevant part: "(b) The attendance of witnesses and the production of documents at such investigations may be compelled by subpoena, signed by any official authorized to issue such process.

"(c) If any witness properly summoned fails to appear or to produce any documents included in the subpoena, or if he fails to answer any proper question, the investigatory grand jury conducting the investigation may report the matter to the state's attorney for the judicial district which has

completion of the grand jury investigation, the grand juror, in a final report, concluded, inter alia, that probable cause existed to believe that as many as twenty-four persons had committed various crimes.

On October 24, 1994, the defendant was charged in the present case with one count of larceny in the first degree[5] in violation of General Statutes § 53a-122 (a) (4).[6] Prior to trial, the defendant moved in limine to

been designated in subsection (a) of section 54-47d unless such state's attorney is the applicant or has been appointed to assist in such investigation, in which case the investigatory grand jury shall report the matter to the Chief State's Attorney, and such state's attorney or Chief State's Attorney, as the case may be, may file a complaint setting forth the facts at any criminal session of the superior court in such judicial district. The court shall thereupon issue a citation to the witness to appear before the court and show cause why he should not be punished as for a contempt, and if, after hearing, the court finds that he failed to appear without due cause or failed to produce any document properly to be presented to the investigatory grand jury or failed to answer any proper question in the course of the investigation, it may punish him as it might a witness failing to appear, to produce a document properly to be considered or to answer a proper question before the court.

"(d) Witnesses may be examined by the investigatory grand jury conducting the investigation or by any attorney or attorneys appointed by such investigatory grand jury for such purpose. At the hearing, the official conducting the investigation shall inform the witness that he has the right to have counsel present and to consult with such counsel.

"(e) The official conducting the investigation shall inform any witness who is a target of the investigation that he is a target and shall advise him that he has the right under the constitution of the United States and the constitution of Connecticut not to be compelled to be a witness, or to give evidence, against himself. . . ."

[5] On March 6, 1997, the state filed a substitute information charging the defendant with one count each of larceny in the first degree and larceny in the third degree. The substitute information was the subject of the state's motion to dismiss. See footnote 9 of this opinion and accompanying text.

[6] General Statutes § 53a-122 (a) (4) provides: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

General Statutes § 53a-119, in defining larceny, provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

preclude the state from using his grand jury testimony as evidence in its case-in-chief against him.[7] In support of his motion, the defendant maintained that, because our statutes relating to investigatory grand juries; General Statutes § 54-47a et seq.; do not expressly authorize the state to introduce a defendant's grand jury testimony in its case-in-chief, such use is barred under common-law principles of grand jury secrecy.

The trial court, *Koletsky, J.*, filed an extensive memorandum of decision granting the defendant's motion. After discussing the history and the law pertaining to investigatory grand juries in Connecticut, the trial court concluded: "There are, to be sure, numerous policy reasons for preserving grand jury secrecy, and while many of those reasons no longer obtain after the conclusion of the grand jury proceedings, certainly the thought that witnesses who learned that their testimony was not sacrosanct will be deterred from future uninhibited testimony, as will others not involved in that particular grand jury process. See *In re Investigation of the Grand Juror into Cove Manor Convalescent Center, Inc.*, [4 Conn. App. 544, 495 A.2d 1098 (1985), appeal dismissed, 203 Conn. 1, 522 A.2d 1228 (1987)].

"[The Connecticut] Supreme Court has instructed that where the traditional secrecy of grand jury proceedings is well entrenched in the common law, any change in that law must be strictly construed. *State* v. *Canady*, 187 Conn. 281, 287, 445 A.2d 895 (1982). While the legislature has lessened grand jury secrecy in many ways in recent years, it notably has *not* done so in expressly permitting use by the state of grand jury testimony as evidence. No radical departure from the long standing

---

[7] The defendant previously had moved to suppress his grand jury testimony, claiming that the state's attorney had failed to warn him properly that he was a target of the investigation, as required by § 54-47f (e). The trial court, *Miano, J.*, denied the defendant's motion. The trial court's ruling on the defendant's motion to suppress is not the subject of this appeal.

policy of preserving grand jury secrecy which is well entrenched in the common law is warranted unless the language of the statute unequivocally expresses such an intent. *In re Investigation of the Grand Juror into Cove Manor Convalescent Center, Inc.*, supra, 4 Conn. App. 554. The court concludes that the common law of Connecticut is still in effect.

"That the prosecution has access to testimony from the grand jury proceeding is clear. From that access it is to be presumed that further investigative work should permit the development of evidence from other sources. In [this] case, no request for release of grand jury transcripts for use in the state's case-in-chief has been made [under General Statutes § 54-47g (a)],[8] nor has there

---

[8] General Statutes § 54-47g provides in relevant part: "Finding and record of investigation. Disclosure. Hearing. Access to testimony. (a) Within sixty days of the conclusion of the investigation, the investigatory grand jury conducting such investigation shall file its finding with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d, and shall file a copy of its finding with the panel and with the Chief State's Attorney or a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation. The stenographer shall file any record of the investigation with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d and the panel and the Chief State's Attorney or a state's attorney, if such Chief State's Attorney or state's attorney made application for the investigation, shall have access to such record upon request made to the clerk of the court without a hearing. Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed. Except as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. Any person aggrieved by an order of the panel shall have the right to appeal such order by filing a petition for review with the Appellate Court within seventy-two hours from the issuance of such order.

been any attempt to demonstrate a 'particularized need.' Whether, in a particular case, that would be availing, this court does not now decide.

"What this court does decide is that in the present case, in which [the] defendant was given both a promise and a warning of confidentiality and secrecy as to his testimony, the state cannot use that testimony in its case-in-chief. Indeed, since the grand juror imposed an order of secrecy on the witness as to his testimony, it may well be that the defendant would be precluded from

---

"(b) The finding of the investigation shall be open to public inspection and copying at the court where it has been filed seven calendar days after it has been filed, unless within that period the Chief State's Attorney or a state's attorney with whom the finding was filed files a motion with the investigatory grand jury requesting that a part or all of such finding not be so disclosed. The finding may include all or such part of the record as the investigatory grand jury may determine, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. In such event as much of the finding as has not been sought to be withheld from disclosure shall be disclosed promptly upon the expiration of said seven-calendar-day period.

"(c) Within fifteen calendar days of the filing of such motion, the investigatory grand jury shall conduct a hearing. The investigatory grand jury shall give written notice of such hearing to the person filing such motion and any other person the investigatory grand jury deems to be an interested party to the proceedings, which may include, but not be limited to, persons who testified or were the subject of testimony before the investigatory grand jury. Within five calendar days of the conclusion of the hearing, the investigatory grand jury shall render its decision, and shall send copies thereof to all those to whom it gave notice of the hearing. It shall deny any such motion unless it makes specific findings of fact on the record that there is a substantial probability that one of the following interests will be prejudiced by publicity that nondisclosure would prevent, and that reasonable alternatives to nondisclosure cannot adequately protect that interest: (1) The right of a person to a fair trial; (2) the prevention of potential defendants from fleeing; (3) the prevention of subornation of perjury or tampering with witnesses; or (4) the protection of the lives and reputations of innocent persons which would be significantly damaged by the release of uncorroborated information. Any order of nondisclosure shall be drawn to protect the interest so found. . . ."

taking the stand to deny the accuracy of the transcript, unless released from that order.

"This is an issue which the legislature may wish to address, but the decision to change three centuries of this state's common law is one that this court does not believe is its function.

"The motion in limine is granted and the state is precluded from offering any grand jury testimony as direct evidence in the state's case-in-chief . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Rivera*, 45 Conn. Sup. 1, 9–11, 697 A.2d 736 (1997).

Thereafter, the trial court granted the state's motions to dismiss the information[9] and for permission to appeal. The state appealed from the judgment of dismissal to the Appellate Court, and we transferred the appeal to this court pursuant to what is now Practice Book § 65-1, and General Statutes § 51-199 (c).

On appeal, the state challenges the trial court's decision to preclude it from introducing the defendant's grand jury testimony in its case-in-chief. In support of its claim, the state maintains that the use of such testimony is authorized under § 54-47g, which governs the disclosure and use of grand jury testimony. The state also contends that, to the extent that the trial court's decision to grant the defendant's motion in limine is predicated upon the defendant's detrimental reliance on the grand juror's order of secrecy, the defendant never established such reliance and, consequently, the trial court reasonably could not have limited the state's use of the defendant's grand jury testimony on the basis of that order of secrecy. The defendant concedes that the state may introduce his grand jury testimony in its

---

[9] In support of its motion to dismiss the information, the state represented, inter alia, that it could not "prove the essential elements of the crime[s] charged . . . *without offering [the defendant's] Grand Jury testimony.*"

case-in-chief in a prosecution for perjury, and that it may use his testimony to cross-examine him in this case if he testifies at trial. The defendant also acknowledges that the state may use his grand jury testimony to develop information regarding the defendant's alleged larcenous conduct. The defendant claims, however, that the state cannot otherwise use his testimony in its case-in-chief absent a determination by the grand jury panel, pursuant to § 54-47g, that such use is "in the public interest." General Statutes § 54-47g (a); see footnote 8 of this opinion. The defendant further contends that the grand juror's order of secrecy provided the trial court with a sufficient, independent basis upon which to preclude the state from using the defendant's grand jury testimony in the state's case-in-chief. We agree with the state and, accordingly, we reverse the judgment of the trial court.

I

We first consider whether our statutes governing the conduct of investigatory grand juries prohibit the state from using the defendant's grand jury testimony against him in its case-in-chief. We conclude that they do not.

"[T]he one-man investigatory grand jury is purely a creature of statute . . . ." *Connelly* v. *Doe*, 213 Conn. 66, 70, 566 A.2d 426 (1989). Thus, our analysis of whether the defendant's grand jury testimony may be introduced during the state's case-in-chief is guided by well established principles of statutory interpretation. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Rivera* v. *Double A Transportation, Inc.,* 248 Conn. 21, 25, 727 A.2d 204 (1999).

Our point of departure is the pertinent statutory language. General Statutes §§ 54-47a through 54-47h delineate the procedures governing investigatory grand juries in Connecticut. The parties agree that the relevant statutory provisions do not explicitly address the question of whether the state may use the grand jury testimony of a witness in its case-in-chief in a subsequent criminal proceeding in which that witness is the defendant. Those statutory provisions, however, contain no express bar to such use of grand jury testimony by the state. This revelation has special relevance in light of the fact that General Statutes § 54-45a (b),[10] which governs *indicting* grand juries,[11] expressly prohibits the subsequent use of such testimony. As evidenced by § 54-45a (b), if the legislature had wanted to prohibit the state from introducing a witness' testimony before an investigatory grand jury in the state's case-in-chief against that witness, it easily could have done so. See *State* v. *Love,* 246 Conn. 402, 411–12, 717 A.2d 670 (1998).

Furthermore, § 54-47g (a) affords prosecutors "access" to the grand jury record upon request and without a hearing. A commonly used definition of the term "access" is the "freedom or ability to obtain or

---

[10] General Statutes § 54-45a (b) provides: "The transcript of such proceedings may not be used as evidence in any proceeding against the accused except for the purpose of impeaching a witness, attacking the credibility of a witness or proving inconsistent statements of a witness. The transcript may also be used as evidence in a prosecution for perjury by a witness while giving such testimony."

[11] Although indicting grand juries were rendered obsolete by the 1982 constitutional amendment mandating probable cause hearings for cases involving crimes carrying a potential sentence of life imprisonment or death; see Conn. Const., amend. XVII; the statutory provisions pertaining to indicting grand juries never have been repealed.

*make use of . . . ."*[12] (Emphasis added.) Webster's Third New International Dictionary. Thus, in common parlance, § 54-47g (a) permits prosecutors to "make use of" the grand jury material in the performance of their duties. The legislature did not expressly limit the "use" to which a prosecutor may put such testimony in the otherwise proper discharge of that prosecutor's responsibilities; this fact belies the defendant's contention that the state is barred from introducing his grand jury testimony in its case-in-chief against him. See *Stein* v. *Hillebrand*, 240 Conn. 35, 40, 688 A.2d 1317 (1997) ("[w]e will not impute to the legislature an intent to limit [a] term where such intent does not otherwise appear in the language of the statute").

Indeed, the defendant concedes, and we agree, that the state's access to his grand jury testimony would permit the state to use that testimony to develop other incriminating evidence, and that *secondary* evidence could be introduced by the state in its case-in-chief. It would be a bizarre interpretation of the concept of "access to testimony" to say that it may be used to incriminate the witness secondarily but not directly. We decline to read statutes so as to reach bizarre or absurd results. *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 651, 729 A.2d 212 (1999). This is particularly apt in view of the *purpose* of the investigative grand jury: to determine whether *crimes* have been committed.

Section 54-47g (a) also provides in relevant part: "Except as otherwise provided in this section . . . any person may file an application with the [grand jury]

---

[12] General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." "To ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term." *In re Darlene C.*, 247 Conn. 1, 11 n.29, 717 A.2d 1242 (1998).

panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest . . . ." The phrase "except as otherwise provided" is most plausibly interpreted as referring to the fact that the court, the grand jury panel and the designated prosecutorial personnel have unfettered access to the grand jury proceedings, and, consequently, need not petition the panel for authorization to use those materials in discharging their duty to investigate and prosecute crime.

Moreover, in the absence of persuasive evidence to the contrary, we may presume that a word used in different parts of the same statutory scheme has the same meaning. See, e.g., *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 343, 612 A.2d 1203 (1992) ("where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance" [internal quotation marks omitted]). Section 54-47g (g) provides in relevant part: "Notwithstanding the existence of an order of nondisclosure under this section, the presiding judge . . . or his designee, shall grant any written request of a person accused of a crime as a result of the investigation to have *access*, at all reasonable times, to the record of his own testimony and to obtain a copy of such record." (Emphasis added.) It would be strange, indeed, for the legislature to have granted a defendant an absolute right of access to his or her own grand jury testimony and then require the defendant to apply to the grand jury panel for permission, under § 54-47g (a), to publish that testimony at his or her trial. If a defendant's right of access to his or her testimony under § 54-47g (g) includes the right to publish that testimony at trial, which seems perfectly reasonable, then we see no reason why the state's right

of access to the defendant's grand jury testimony is not similarly unconditional.

The defendant nevertheless argues that, because the common law favored secrecy and confidentiality in grand jury proceedings, we necessarily must resolve any claim under our statutory scheme in favor of secrecy unless those statutory provisions explicitly have abrogated the requirement of secrecy. We disagree. Although the common law embraced a principle of secrecy in grand jury proceedings,[13] it generally recognized such secrecy only when it was necessary to further the purposes of grand jury confidentiality. See *In re Grand Jury Investigation by Judge John M. Alexander*, 207 Conn. 98, 107, 540 A.2d 49 (1988) ("public disclosure of grand jury proceedings must be regulated with an eye to the recognized importance of secrecy in the proper functioning of the grand jury system" [internal quotation marks omitted]); 8 J. Wigmore, Evidence (4th Ed. 1961) § 2360, pp. 731–32 (limitations on secrecy must depend upon reasons for secrecy). "Safeguarding the confidentiality of grand jury proceedings serves a number of functions. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy

---

[13] The principle of grand jury secrecy "is well entrenched in the common law [and] older than our Nation itself . . . *Pittsburgh Plate Glass Co.* v. *United States*, 360 U.S. 395, 399, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959) . . . ." (Internal quotation marks omitted.) *State* v. *Canady*, supra, 187 Conn. 287.

of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule. *Douglas Oil Co.* v. *Petrol Stops Northwest,* [441 U.S. 211, 219, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979)]." (Internal quotation marks omitted.) *In re Final Grand Jury Report Concerning the Torrington Police Dept.,* 197 Conn. 698, 709–10, 501 A.2d 377 (1985).

The secrecy of grand jury proceedings, however, never has had as a goal the protection of grand jury witnesses who, without immunity, voluntarily incriminate themselves during their sworn testimony. Rather, grand jury secrecy is intended to protect against the premature disclosure of information in advance of the completion of the investigation, and to ensure that information gathered during the investigation is not disclosed without sufficient reason. When the investigation has been completed, the persuasive force of the arguments in favor of secrecy are greatly diminished. "[O]bviously the secrecy that is guaranteed is only *temporary* and provisional. Permanent secrecy would be more than is necessary to render the witness willing. . . . [The need for secrecy] ceases when the grand jury has finished its duties and has either indicted or discharged the persons accused." (Emphasis in original.) 8 J. Wigmore, supra, § 2362, p. 736. The common law, therefore, recognized that the veil of secrecy surrounding grand jury proceedings may be lifted when and if the purposes of protecting witnesses and preventing premature disclosure of information are no longer served.

Moreover, the legislative genealogy of § 54-47g reveals a distinct trend away from a policy of rigid nondisclosure in grand jury matters. The first statutory provision to include procedures for investigatory grand juries, which was enacted in 1941, allowed the proceedings, testimony and final report to be made public in

the discretion of the trial court. See General Statutes (Cum. Sup. 1941) § 889f.[14] In 1985, the legislature significantly expanded the statutory provisions relating to investigatory grand juries for the purpose of streamlining the grand jury process, increasing the accountability and openness of such investigations and expanding public access to the findings and records. For example, Public Acts 1985, No. 85-611 (P.A. 85-611), empowered the grand jury panel, by majority vote, to disclose the finding and record of grand jury proceedings upon a determination that such disclosure would "be in the public interest." P.A. 85-611, § 6, codified at General Statutes (Rev. to 1987) § 54-47g (a). The act further provided that any witness or any person accused of a crime as a result of a grand jury investigation may have access to the record of his or her own grand jury testimony. P.A. 85-611, § 6, codified at General Statutes (Rev. to 1987) § 54-47g (b) and (c).[15]

---

[14] General Statutes (Cum. Sup. 1941) § 889f provided in relevant part: "At the conclusion of [an] inquiry [to determine probable cause] the judge or referee conducting the same shall file with the court a report and the court shall direct whether, and to what extent, such report shall be made available to the public or interested parties; and any transcript of testimony taken at such inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report; provided that any person accused of crime as a result of such inquiry shall have access at all reasonable times to the transcript of his own testimony given by him in such inquiry."

[15] The legislative history of P.A. 85-611 indicates that it was a compromise between those legislators who wanted to increase the openness of grand jury proceedings and those who believed that premature public disclosure of information gleaned from the investigation would limit the capability of the grand jury to investigate crime effectively. See, e.g., 28 S. Proc., Pt. 17, 1985 Sess., p. 5714, remarks of Senator Richard B. Johnston ("[t]he agreement worked out between the Committee members was that such proceedings, or rather the investigation and the grand jury's findings and report would be private, provided the . . . three judge panel, by majority vote, may very well decide to disclose the fact that any matter has been referred to a grand jury for investigation; or subsequently may, by majority vote . . . again, the panel of judges, decide that the finding and record of the investigation by the grand jury should be disclosed and made public, because of the investigation and/or the findings and the report to be in the public interest, and therefore, to be a public matter").

In 1987, the legislature further increased the accessibility of grand jury materials by adding a provision that allowed state's attorneys to receive the record and transcripts of grand jury proceedings upon request and without a hearing. See Public Acts 1987, No. 87-350, § 5 (P.A. 87-350).[16] Recognizing the central role of the prosecutor in the grand jury process, the legislative purpose behind this amendment was to facilitate the prosecutors' receipt of copies of grand jury testimony and records for use in the investigation and prosecution of crime. See 30 H.R. Proc., Pt. 19, 1987 Sess., p. 6922, remarks of Representative Jay B. Levin; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1987 Sess., p. 945, remarks of John Kelly, chief state's attorney.

In 1988, the legislature cut back even further on the confidentiality of the grand juror's findings and conclusions. Public Acts 1988, No. 88-345 (P.A. 88-345), provides in relevant part that "[t]he finding of the investigation shall be open to public inspection and copying . . . seven calendar days after it has been filed, unless within that period the chief state's attorney or a state's attorney . . . [requests] that a part or all of such finding not be so disclosed. The finding may include all or such part of the record as the investigatory grand jury may determine . . . ." P.A. 88-345, § 1, codified at General Statutes (Rev. to 1989) § 54-47g (b). This amendment, in effect, established a rebuttable presumption of disclosure: in the event that the chief state's attorney seeks to seal the record, "the investigatory grand jury shall conduct a hearing . . . [and] shall deny any such motion unless it makes specific findings of fact on the record that there is a substantial probability

[16] Section 5 of P.A. 87-350 provides in relevant part: "[T]he chief state's attorney or a state's attorney, if such chief state's attorney or state's attorney made application for the investigation shall have access to such record upon request made to the clerk of the court without a hearing. . . ."

that one of the following interests will be prejudiced by publicity that nondisclosure would prevent, and that reasonable alternatives to nondisclosure cannot adequately protect that interest: (1) The right of a person to a fair trial; (2) the prevention of potential defendants from fleeing; (3) the prevention of subornation of perjury or tampering with witnesses; or (4) the protection of the lives and reputations of innocent persons which would be significantly damaged by the release of uncorroborated information." P.A. 88-345, § 1, codified at General Statutes (Rev. to 1989) § 54-47g (c). In the same public act, the legislature also authorized "any person" to "file an application with the [grand jury] panel for disclosure of any . . . part of [a grand jury] record"; P.A. 88-345, § 1, codified at General Statutes (Rev. to 1989) § 54-47g (a); and empowered the panel to grant such application if, after notice and a hearing, it determines, by a majority vote, that disclosure would "be in the public interest." P.A. 88-345, § 1, codified at General Statutes (Rev. to 1989) § 54-47g (a). Section 54-47g has not been amended since 1988.

This development of § 54-47g demonstrates that, over time, the legislature has provided for increased disclosure of grand jury proceedings and testimony. Recognizing the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings, the statute favors disclosure after the grand jury has completed its investigation. Thus, neither the reasons for common-law secrecy nor the current statutory scheme preclude the state from using the defendant's incriminating grand jury testimony in its case-in-chief against the defendant.

Finally, the statutory interpretation urged by the state is identical to that followed by the federal courts under rule 6 (e) of the Federal Rules of Criminal Procedure. We previously have been guided by federal law in construing our own investigatory grand jury statutes. See,

e.g., *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, supra, 197 Conn. 712 ("[t]he test of 'particularized need' under the federal cases is therefore an entirely appropriate measure of the discretionary authority conferred upon the Superior Court by § 54-47 [g]"). Rule 6 (e) of the Federal Rules of Criminal Procedure, like the provisions governing investigatory grand juries in this state, vests "the attorney for the government" with complete access to federal grand jury proceeding materials, whereas no such access is available to other persons absent a court order.[17] See Fed. R. Crim. P. 6 (e) (3) (C) (i). Similarly, rule 6 (e) contains no prohibition against the use of grand jury testimony by federal prosecutors who, acting in the discharge of their official duties, routinely use such testimony in criminal prosecutions and related proceedings without prior approval from the United States District Court, which exercises supervisory authority over the federal grand jury process.[18]

---

[17] Under rule 6 (e) (3) of the Federal Rules of Criminal Procedure, a government attorney is entitled to access to grand jury proceedings "for use in the performance of such attorney's duty"; Fed. R. Crim. P. 6 (e) (3) (A) (i); whereas any other disclosure requires an order of the court.

[18] The defendant also claims that, even if the state's use of his grand jury testimony in its case-in-chief is not barred by statute or the common law, the state may not use that testimony against him because to do so would violate his right to a fair trial. In support of his claim, the defendant asserts that, because the state could not subpoena him to testify at his own trial, it should not be able to obtain his testimony pursuant to a grand jury subpoena and then use his testimony against him to prove his guilt in a subsequent criminal trial. In essence, the defendant claims that the state's use of his grand jury testimony at his criminal trial violates his fifth amendment right not to be a witness against himself. We reject this claim. The defendant was advised of his rights immediately prior to testifying before the grand jury, including his fifth amendment privilege to refuse to answer any question if doing so would have tended to incriminate him. The record reflects, therefore, that the defendant knowingly and freely waived his constitutional privilege against self-incrimination. In such circumstances, it cannot be said that the use of his testimony against him implicates his right to refrain from incriminating himself.

The defendant also asserts that, if the state wishes to introduce his grand jury testimony in its case-in-chief, the trial court first must find, under § 54-47g (a), that such disclosure is "in the public interest." We disagree. Because the state, under that same statutory subsection, has an absolute right to obtain grand jury testimony from the clerk of the court,[19] it would be redundant to require the state to seek "disclosure" of the testimony from the grand jury panel. Furthermore, the unique role our prosecutors play in assisting the grand jury and prosecuting crimes exposed during the course of the grand jury investigation strongly suggests that the legislature did not intend that prosecutors would be required to seek special permission to use such testimony.[20] It would make little sense for the legislature to have granted prosecutors access to all grand jury testimony and transcripts and then lump them together with the press and private litigants by requiring them to apply to the grand jury panel for permission to use the transcripts to prove its case in a prosecution against the witness. Moreover, requiring a prosecutor to petition the grand jury panel, pursuant to § 54-47g, for permission to use a witness' grand jury testimony in the state's case-in-chief against that witness would result in a waste of judicial resources. It

[19] As we have indicated, § 54-47g (a) grants the state access to the record of the entire grand jury investigation merely upon request made to the clerk of the court and without a hearing.

[20] For example, in conducting its investigation, the grand jury may request assistance from the chief state's attorney or a state's attorney. General Statutes § 54-47f (a) (1). If a witness fails to appear before the grand jury, it may report the matter to the chief state's attorney or a state's attorney. General Statutes § 54-47f (c). When the grand jury completes its investigation, it must file its finding with the chief state's attorney or a state's attorney. General Statutes § 54-47g (a). In addition, the record of the proceedings must be filed with the court and the grand jury panel, and the chief state's attorney or a state's attorney has access to that record upon request. General Statutes § 54-47g (a). Finally, the grand jury's finding is open to the public unless the chief state's attorney or a state's attorney files a motion with the grand jury requesting that all or part of the grand jury's finding not be disclosed. General Statutes § 54-47g (b).

virtually is impossible to imagine a scenario in which the grand jury panel reasonably could conclude that the public interest would not warrant the state's use of such testimony for the purpose of proving a crime that the grand jury found probably was committed, and with which the defendant has been charged. In light of this fact, it is difficult to discern any reason why the legislature would have required the state to make an independent showing that such use is in the public interest.[21]

We conclude, therefore, that the state's right of access to the testimony of a grand jury witness includes the right to use that testimony in its case-in-chief in a subsequent criminal prosecution of that witness. We now turn to the question of whether the order of secrecy imposed by the grand juror in this case requires a different result.

## II

The defendant claims that, even if the statutory scheme does not prohibit the state from using the defendant's grand jury testimony against him in the state's case-in-chief, the state nevertheless is foreclosed from doing so in this case based on the grand juror's order of secrecy. We disagree.

At the outset, we note that the precise basis for the trial court's ruling in this case is not clear. Although virtually all of the trial court's memorandum of decision is devoted to a discussion of the defendant's statutory claim; see generally *State* v. *Rivera*, supra, 45 Conn. Sup. 1; it appears that the court's decision is based, at

---

[21] Of course, if a defendant believes that his or her grand jury testimony is the product of some impropriety, such as fraud, coercion or the like, the defendant can move to suppress that testimony in the trial court, as the defendant did in this case. See footnote 7 of this opinion.

least in part, on the grand juror's order of secrecy. See id., 9–10.[22]

To the extent that the trial court's ruling *is* predicated upon the grand juror's order of secrecy, it lacks support in the record because the defendant never established—indeed, he never claimed—that he had relied to his detriment on the grand juror's order of secrecy. The defendant bore the burden of establishing such reliance because the grand juror's instruction was not so clear and unambiguous as to require a finding of detrimental reliance. The fact that the instructions were given by a judge serving as a grand juror is not dispositive of what the defendant *actually understood* those instructions to mean. Accordingly, in the absence of proof of a nexus between the grand juror's instructions and the defendant's testimony—in other words, in the absence of a showing of detrimental reliance—the defendant cannot prevail. See, e.g., *State* v. *Carter*, 243 Conn. 392, 398–401, 703 A.2d 763 (1997) (trial court error in plea canvass did not affect validity of defendant's voluntary guilty plea); *State* v. *Domian*, 235 Conn. 679, 687–92, 668 A.2d 1333 (1996) (same); *State* v. *McCarthy*, 197 Conn. 247, 256–59, 496 A.2d 513 (1985) (police promises of leniency did not vitiate defendant's voluntary confession).[23]

We reach this conclusion for two essential reasons. First, the defendant, a trained law enforcement officer,

---

[22] The trial court's memorandum of decision contains the following statement: "What this court does decide is that in the present case, in which this defendant was given both a promise and a warning of confidentiality and secrecy as to his testimony, the state cannot use that testimony in its case-in-chief." *State* v. *Rivera*, supra, 45 Conn. Sup. 10; see part I of this opinion.

[23] Following the logic of these cases, in which the defendants claimed that they had confessed or accepted a plea bargain based upon inaccurate information regarding the consequences of their confession or plea, we conclude that the grand juror's order of secrecy is not dispositive of the defendant's appeal unless the defendant can prove that he testified as he did because of, and in reliance on, the order of secrecy.

reasonably could have interpreted the order of secrecy to be limited, both in time and in scope, to the pendency of the grand jury investigation. For example, in instructing the defendant, the grand juror stated that the defendant could be held in contempt if the defendant breached the confidentiality of the proceedings. A necessary implication of this statement is that the state, in prosecuting and proving a contempt violation, would be required to introduce evidence of what had occurred during the grand jury proceedings. Furthermore, the advisement of rights the state's attorney gave to the defendant, which carried the imprimatur of the grand juror and which was given in his presence,[24] informed the defendant that he could be prosecuted for perjury. Any such prosecution naturally would require the state to introduce the defendant's grand jury testimony in its case-in-chief. Finally, the secrecy order contained no language indicating that it was of permanent duration and, therefore, the defendant reasonably could have understood only that the order applied until the grand jury completed its investigation.[25]

Second, neither the grand juror nor the state's attorney ever expressly advised the defendant that the state could not use his testimony against him in a subsequent criminal proceeding. On the contrary, the state's attorney informed the defendant that he was "at least a potential target of [the] investigation," and that he was entitled to assert his fifth amendment privilege if he "[felt] that, in some way, [his testimony] might incriminate [him] in the commission of a crime." These admonitions, together with the other relevant facts, give rise

[24] The grand juror told the defendant that "in a few minutes . . . [the state's attorney] will be advising you as he does all the witnesses."

[25] Moreover, as the state points out, the grand juror's admonition to the defendant that he, like other witnesses, was not to discuss the proceedings "outside this room," and that he was not to "go out of this building or anywhere in this building" and discuss the matter, implied that the order of secrecy was directed at preventing the immediate or premature disclosure of the proceedings.

to a reasonable probability that the defendant was not misled to his detriment by the grand juror's order of secrecy.[26]

In sum, only the defendant knows whether he testified before the grand jury because he believed, on the basis of the grand juror's advisement, that the state's right to use his testimony against him was limited in the manner he now claims. If, as a result of the grand juror's instructions, the defendant did harbor such a belief, then it was his burden to establish that fact. The question, therefore, is not whether the defendant reasonably *could have relied* on the advisement to his detriment, but whether he *did detrimentally rely* on that advisement. If the defendant had, in fact, relied to his detriment on the grand juror's order of secrecy, one would have expected him to seek to establish that fact, either in support of his motion in limine or in support of his motion to suppress his testimony. See footnote 7 of this opinion. In any event, in the absence of such proof, the trial court could not reasonably have concluded that the grand juror's order of secrecy barred the state from using the defendant's grand jury testimony against him in its case-in-chief.[27]

The judgment is reversed and the case is remanded with direction to deny the defendant's motion in limine, and for further proceedings according to law.

In this opinion CALLAHAN, C. J., and BORDEN and MCDONALD, Js., concurred.

---

[26] Indeed, the fact that a representative of the state's attorney's office was present and taking an active role in the grand jury proceedings makes it less likely that the defendant, a trained law enforcement officer himself, would have believed, absent a clear and unambiguous advisement to the contrary, that the state's attorney could not use the defendant's own testimony in a criminal case against him.

[27] To the extent that the trial court's ruling is predicated upon the grand juror's order of secrecy, that ruling, in effect, creates an irrebuttable pre-

PETERS, J., with whom BERDON and KATZ, Js., join, dissenting. The dispositive issue in this case is the effect of an unconditional order of secrecy given to a witness by a grand juror conducting investigatory grand jury proceedings. Specifically, if such a witness subsequently is charged with criminal misconduct, should the trial court grant a motion in limine to preclude the state from using the witness' grand jury testimony in the state's case-in-chief? The majority would allow the witness' testimony to be so used in the absence of a factual showing by the witness that he relied on the order of secrecy. Because I disagree with that conclusion, I respectfully dissent.

The state charged the defendant, Matthew Rivera, with one count of larceny in the first degree in violation of General Statutes § 53a-122 (a) (4) and one count of larceny in the third degree in violation of General Statutes §§ 53a-119 and 53a-124 (a) (2).[1] The defendant, invoking the principle of secrecy in investigative grand jury proceedings, filed a motion in limine to preclude the state from offering, in its case-in-chief, testimony that the defendant, in response to a subpoena,[2] had

_____

sumption that the defendant relied to his detriment on the order. For the reasons previously discussed, we see no persuasive reason why the order of secrecy in this case should be deemed to give rise to such a presumption.

[1] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (4) the property is obtained by defrauding a public community, and the value of such property exceeds two thousand dollars."

General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds one thousand dollars . . . ."

[2] The trial court, *Kolestsky, J.*, ruled that the fact that the disputed evidence had been given in response to a subpoena did not, per se, provide any state or federal constitutional basis for excluding the evidence at the criminal trial.

given earlier before a one-person investigatory grand jury conducted by Judge Arthur L. Spada.[3] The trial court, *Koletsky, J.,* granted the defendant's motion. Thereafter, the trial court granted the state's motions to dismiss the appeal and for permission to appeal.[4]

Under the governing statute, both the state and the defendant, once criminal charges had been lodged against him, had access to the defendant's grand jury testimony. General Statutes § 54-47g (a) and (g).[5] For

[3] The defendant previously had filed a motion to suppress this testimony in its entirety because the state's attorney, in the grand jury proceedings, allegedly had failed to give the defendant a proper warning that he was a target of the investigation. That motion was denied by the trial court, *Miano, J.* The merits of the trial court's ruling on that motion are not before us in this appeal.

[4] The state appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[5] General Statutes § 54-47g (a) provides: "Within sixty days of the conclusion of the investigation, the investigatory grand jury conducting such investigation shall file its finding with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d, and shall file a copy of its finding with the panel and with the Chief State's Attorney or a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation. The stenographer shall file any record of the investigation with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d and the panel and the Chief State's Attorney or a state's attorney, if such Chief State's Attorney or state's attorney made application for the investigation, shall have access to such record upon request made to the clerk of the court without a hearing. Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed. Except as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. Any person aggrieved by an order of the panel shall have the right to appeal such order

other persons seeking such access, § 54-47g (a) provides that: "Except as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest . . . ." See *In re Grand Jury Investigation by Judge John M. Alexander*, 207 Conn. 98, 107, 540 A.2d 49 (1988). In subsequent proceedings arising out of Judge Spada's grand jury investigation, two other grand jury witnesses persuaded the investigatory grand jury panel that release of certain parts of the grand jury record to the movants was in the public interest. The state, however, filed no disclosure request with the panel until after the trial court had granted the defendant's motion in limine. The panel refused to consider the merits of the state's request during the pendency of its appeal to this court.

The majority now concludes that, despite the absence of a timely disclosure request, the trial court should have permitted the state to introduce the disputed testimony because § 54-47g, by affording the state "access to [the grand jury] record," unconditionally authorized the state to use the disputed evidence in its case-in-chief. Under the circumstances of this case, I disagree.

by filing a petition for review with the Appellate Court within seventy-two hours from the issuance of such order."

General Statutes § 54-47g (g) provides: "Notwithstanding the existence of an order of nondisclosure under this section, the presiding judge of the criminal session of the court of the judicial district wherein the record of the investigation has been filed, or his designee, shall grant any written request of a person accused of a crime as a result of the investigation to have access, at all reasonable times, to the record of his own testimony and to obtain a copy of such record."

As a general matter, the issue of construing the grand jury statutes strikes me as more problematic than it appears to the majority. I recognize that the investigatory grand jury is a creature of statute. *Connelly* v. *Doe*, 213 Conn. 66, 70, 566 A.2d 426 (1989). In construing grand jury statutes, however, we have applied the principle of strict construction whenever the legislature has sought to diminish the traditional common-law secrecy of grand jury proceedings. The principle of grand jury secrecy "is well entrenched in the common law—'older than our Nation itself,' *Pittsburgh Plate Glass Co.* v. *United States*, 360 U.S. 395, 399, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959) . . . ." *State* v. *Canady*, 187 Conn. 281, 287, 445 A.2d 895 (1982); see also *In re Final Grand Jury Report Concerning the Torrington Police Dept.*, 197 Conn. 698, 707–10, 501 A.2d 377 (1985). "[P]ublic disclosure of grand jury proceedings must be regulated with an eye to 'the recognized importance of secrecy in the proper functioning of the grand jury system.' " *In re Grand Jury Investigation by Judge John M. Alexander*, supra, 207 Conn. 107.

In light of these precedents, unlike the majority, I am not persuaded that the most significant reference point afforded by our common-law tradition is that "the veil of secrecy surrounding grand jury proceedings may be lifted when and if the purposes of [that secrecy] are no longer served." Although that may well be the federal practice, our case law has traditionally assigned a more central role to grand jury secrecy than the majority's statement would suggest. That central role reflects an ongoing concern for the privacy interests of those who are required to testify at grand jury hearings, typically as a result of a subpoena, and typically without the assistance of counsel.

If we take grand jury secrecy as the background against which to construe grand jury statutes, then it seems to me important that our statutes, as currently

drafted, provide no explicit authorization for the state to introduce into evidence, in its case-in-chief, testimony that a defendant gave as a witness before an investigatory grand jury. The majority points to General Statutes § 54-45a (b),[6] under which evidence given by a witness before an *indicting* grand jury "may not be used as evidence in any proceeding against the accused . . ." except for limited purposes such as challenges to the accuracy or veracity of a witness. One inference to be drawn from that statute, as the majority suggests, is that no such limitation obtains in the case of an *investigatory* grand jury. An alternate inference, however, is that the legislature knew how to address the issue of "use" expressly and chose not to do so, perhaps for the reason that such "use" had not been an issue for testimony given before investigatory grand juries. At the very least, the inference drawn by the majority is debatable.[7]

My view of the statutory construction question can best be summed up by the phrase "not proven." The best resolution would be for the legislature itself to revisit the question and to clarify its intention. Under the circumstances of this case, I think we would do well to await such legislative clarification because, contrary to the majority, I am persuaded that the order of

[6] General Statutes § 54-45a (b) provides: "The transcript of such proceedings may not be used as evidence in any proceeding against the accused except for the purpose of impeaching a witness, attacking the credibility of a witness or proving inconsistent statements of a witness. The transcript may also be used as evidence in a prosecution for perjury committed by a witness while giving such testimony."

[7] In my mind, it is far from bizarre to envisage a legislative intent not to permit the state to rely on the most incriminating evidence of all, a defendant's own statement, but to permit the state to search out other evidence that a defendant may be able to rebut more readily. The probative power of secondary evidence is not likely to be identical to that of direct evidence. See also General Statutes § 54-45a.

Furthermore, the legislature may have considered that a witness, fearing retribution from a third party, may consider his or her exposure to that risk to be exacerbated if his or her own testimony becomes public information.

secrecy given to the defendant by the grand juror in this case should be given legal effect.

The underlying facts of record are not disputed. On February 10, 1993, pursuant to General Statutes (Rev. to 1993) §§ 54-47c and 54-47d,[8] an investigatory grand

[8] General Statutes (Rev. to 1993) § 54-47c provides: "(a) Any judge of the superior court, appellate court or supreme court, the chief state's attorney or a state's attorney may make application to a panel of judges for an investigation into the commission of a crime or crimes whenever such applicant has reasonable belief that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed.

"(b) Each application for an investigation into the commission of a crime or crimes shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information: (1) The identity of the applicant and his authority to make such application; (2) a full and complete statement of the facts and circumstances relied upon by the applicant to justify his reasonable belief that the investigation will lead to a finding of probable cause that a crime or crimes have been committed; and (3) a full and complete statement of the facts concerning all previous applications known to the applicant, made to any panel of judges, for investigation of any one or more of the same criminal offenses involving any of the same persons specified in the application, including the action taken by the panel on each such application. The panel of judges may require such additional testimony or documentary evidence in support of facts in the application as it deems necessary. Such additional testimony shall be transcribed. If the application is made by the chief state's attorney or a state's attorney, it shall also include a full and complete statement of facts showing that other normal investigative procedures with respect to the alleged crime have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous to employ."

General Statutes (Rev. to 1993) § 54-47d provides: "(a) If the panel approves the application and orders an investigation into the commission of a crime or crimes, the chief court administrator shall (1) appoint an investigatory grand jury to conduct the investigation and (2) designate the court location in the judicial district where any motions to quash and any contempt proceedings shall be heard and any findings and records of the investigation shall be filed.

"(b) Each order authorizing the investigation into the commission of a crime or crimes by the panel shall specify: (1) The date of issuance of the order, (2) the period of time within which the investigation is to be conducted, provided in no event shall the investigation be longer than six months from the date the chief court administrator appoints the investigatory grand jury to conduct the investigation, unless an application for an extension of

jury panel of judges concluded that the administration of justice required an investigation to determine whether or not there was probable cause to believe that a crime or crimes had been committed by state and local law enforcement officers. On February 24, 1993, the chief court administrator appointed Judge Arthur L. Spada, judge trial referee, to conduct the investigation. See General Statutes § 54-47d. The investigation began on March 29, 1993, and continued until August 16, 1994. On December 13, 1993, the defendant was subpoenaed to testify before the grand juror. On October 24, 1994, the defendant was arrested and charged with the crimes of larceny in the first degree and larceny in the third degree.

At the outset of the grand jury proceedings, the defendant received two instructions about the testimony that he was about to give. One instruction was given by the grand juror, and the other was given by Paul Murray, an assistant state's attorney.

In the presence of the assistant state's attorney, the grand juror told the defendant to obey an order of secrecy that not only precluded the defendant from

time is filed and granted pursuant to subsection (c) of this section, (3) the scope of the investigation, and (4) its reasons for finding that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed. The panel shall retain a copy of the order and the original application and shall transmit to the investigatory grand jury, appointed pursuant to subsection (a) of this section, the original order and a copy of the application filed with the panel.

"(c) The investigatory grand jury may make an application to the panel of judges for an extension of time within which to conduct its investigation or for an amendment to the scope of its investigation. The application for extension or amendment shall set forth the reasons for the necessity of such extension or amendment. No more than two extensions or amendments of an order may be granted by the issuing panel. The period of any extension shall be no longer than the panel deems necessary to achieve the purposes for which it was granted and in no event shall any extension be for a period longer than six months."

disclosing his grand jury testimony but also purported to preclude such disclosure by every individual in the hearing room. The grand juror warned the defendant that failure to obey the order of secrecy would expose him to the risk of criminal contempt.

In accordance with General Statutes § 54-47f,[9] the assistant state's attorney then instructed the defendant

[9] General Statutes § 54-47f provides: "(a) The investigatory grand jury, in conducting the investigation, may (1) seek the assistance of the Chief State's Attorney or state's attorney who filed the application, or his designee, (2) appoint an attorney to provide assistance if a judge of the Superior Court, Appellate Court or Supreme Court filed the application or (3) appoint any other attorney to provide assistance when necessary in the interest of justice.

"(b) The attendance of witnesses and the production of documents at such investigations may be compelled by subpoena, signed by any official authorized to issue such process.

"(c) If any witness properly summoned fails to appear or to produce any documents included in the subpoena, or if he fails to answer any proper question, the investigatory grand jury conducting the investigation may report the matter to the state's attorney for the judicial district which has been designated in subsection (a) of section 54-47d unless such state's attorney is the applicant or has been appointed to assist in such investigation, in which case the investigatory grand jury shall report the matter to the Chief State's Attorney, and such state's attorney or Chief State's Attorney, as the case may be, may file a complaint setting forth the facts at any criminal session of the superior court in such judicial district. The court shall thereupon issue a citation to the witness to appear before the court and show cause why he should not be punished as for a contempt, and if, after hearing, the court finds that he failed to appear without due cause or failed to produce any document properly to be presented to the investigatory grand jury or failed to answer any proper question in the course of the investigation, it may punish him as it might a witness failing to appear, to produce a document properly to be considered or to answer a proper question before the court.

"(d) Witnesses may be examined by the investigatory grand jury conducting the investigation or by any attorney or attorneys appointed by such investigatory grand jury for such purpose. At the hearing, the official conducting the investigation shall inform the witness that he has the right to have counsel present and to consult with such counsel.

"(e) The official conducting the investigation shall inform any witness who is a target of the investigation that he is a target and shall advise him that he has the right under the constitution of the United States and the constitution of Connecticut not to be compelled to be a witness, or to give evidence, against himself.

about his duties as a witness. The assistant state's attorney informed the defendant that: (1) false testimony might expose him to a perjury charge; (2) he had a constitutional privilege to refuse to testify if such testimony would tend to incriminate him; (3) a court might nonetheless direct him to testify, but, in that case, he would receive immunity from prosecution with regard to that testimony; (4) he had a right to counsel; and (5) he was being questioned as a potential target of the grand jury investigation.[10]

The majority opinion accepts the view of the state that a right of "access" affords the state an unlimited right of prosecutorial use. The state argues that the statute places no limitations on its use of the defendant's grand jury testimony because that testimony was not compelled. Because it is undisputed that the defendant is not eligible for the immunities conferred by General Statutes § 54-47a (b), the state maintains that he has no exclusionary rights whatsoever. The state envisages only two universes: compelled testimony and testimony that is not compelled.

In effect the state's argument, which the majority accepts, is that the only instructions that accurately informed the defendant about his situation when he was before the grand jury were those given to him by the assistant state's attorney. It was irrelevant that the grand juror told the defendant that he was under an *order of secrecy* that covered not only the defendant, "but every individual in this room," presumably including the assistant state's attorney. The grand juror said

"(f) Any attorney appointed to assist in conducting the investigation shall disclose to the investigatory grand jury any exculpatory information or material in his possession, custody or control concerning any person who is a target of the investigation.

"(g) An official stenographer of the Superior Court or his assistant shall record any testimony taken at the investigation."

[10] The defendant unsuccessfully challenged the propriety of these instructions in a motion to suppress. See footnote 3 of this opinion.

nothing meaningful when he stated that "the questions that are asked of you, the subject matter, and any of the answers that you may give are *protected by an order of confidentiality and secrecy*. That is, *no one* in this room can reveal to *anybody* outside this room who was in this afternoon to talk to us, and *no one* can tell *anybody* outside this room what questions were asked of you and what answers you gave. So *the answers you give will also be confidentially protected*." The grand juror was likewise saying nothing of consequence when he warned the defendant that if the defendant disclosed the questions and his answers "anywhere" to "anyone," then the defendant would be in violation of "the order of confidentiality and this order of secrecy," and would be exposed "to an arrest for criminal contempt."

The majority opinion offers several reasons why the grand juror's order of secrecy provides no shelter for the defendant. Principally, the majority takes the position that the defendant's reliance on the grand juror's order cannot be presumed.[11] The defendant, according

---

[11] It is notable that it was not until its reply brief in this court that the state, for the first time, raised the argument that the defendant cannot invoke the representations contained in the order of secrecy without making a factual showing of detrimental reliance. This argument was procedurally improper at that late stage in the proceedings.

I recognize that the trial court interjected the issue of the grand juror's secrecy order into the trial court proceedings late in the trial day. The state could, however, have raised the reliance issue in appropriate postjudgment pleadings that would have alerted the defendant to provide an affidavit about his reliance, a representation that the state would have been hard put to dispute.

Whatever the procedure at trial might have been, the state had an unconstrained opportunity to raise the issue in its initial appellate brief in this court. Had the state availed itself of this opportunity, the defendant would have been in a position to respond to it fully in writing.

Despite the important public interests at stake in this litigation, I have difficulty discerning a reason why the state should not be held to our rules deploring inclusion of new arguments in reply briefs. See *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995). Those who represent the state in appellate proceedings are not neophytes with respect to the appellate process.

to this reasoning, must assert and show a nexus, by way of detrimental reliance, between the grand juror's order and the testimony that he gave.

The rule that the majority adopts is new to this state. The majority derives it from our case law concerning plea bargains for guilty pleas, such as *State* v. *Carter*, 243 Conn. 392, 398–401, 703 A.2d 763 (1997), in which criminal defendants unsuccessfully have challenged the voluntariness of their pleas on the ground of allegedly misleading omissions by the trial court at the time of the initial plea canvass. That line of cases is, however, distinguishable for two reasons. First, the issue in those cases is the alleged reliance by a defendant on what a trial court failed to say, rather than, as in the present case, on what the grand juror did say. There seems to me to be a world of difference between these two situations. Second, each of those cases involved situations in which the decision that the defendant subsequently came to regret was a decision that he had reached with the advice of counsel. We regularly rely, in those cases, on the presumption that counsel fully explained the governing legal principles to the defendant before the entry of the plea. The defendant in the present case had no counsel, and might well have failed fully to understand the importance of obtaining counsel once the assistant state's attorney identified him as a possible target of the investigatory grand jury.

Despite the inherent weaknesses of the guilty plea canvass analogy, the majority opts for a rule requiring a showing of reliance in fact. It emphasizes that the defendant was a trained police officer, but there is nothing in the record to show that the defendant had any prior acquaintance with investigatory grand jury proceedings. It is speculative to suppose that his training as a police officer would have alerted him to the manner in which contempt and perjury prosecutions would be

tried, if he had violated the order of secrecy or committed perjury. It is disingenuous to characterize the order of secrecy as "not clear and unambiguous," because it did not expressly indicate the extent of its duration, when the language used by the grand juror was, on its face, unconditional. Finally, it is not unreasonable for the defendant to have construed an order of secrecy including "everyone in this room" to be binding on the assistant state's attorney whose presence the grand juror expressly acknowledged.

The majority focuses its attention not on what the grand juror said but on what he did not say. It may well be the case that attorneys and judges would not take literally the facially unconditional order of secrecy given to the defendant by the grand juror. Professional training would alert such persons to hear what the grand juror said with implicit caveats. Perhaps the assistant state's attorney understood the grand juror's order in just that way. In that case, as an officer of the court, and recognizing that the defendant was unaccompanied by counsel, he could well have clarified the situation for the benefit of the defendant.

I would not attribute to the defendant a sophisticated understanding of the relationship between grand jury and plenary criminal proceedings for which the record provides no support. Like the trial court, I am persuaded that the defendant was given "both a promise and a warning of confidentiality and secrecy as to his testimony" on which his reliance should be presumed. See *State* v. *Rivera*, 45 Conn. Sup. 1, 10, 697 A.2d 736 (1997). Someone without legal training whom a judge instructs that "the answers you give will also be confidentially protected" cannot be expected to read limitations into unconditional language. In my view, it is improper to treat a court order, enforceable by contempt, as an aleatory promise of no consequence without an actual showing of reliance.

In doing so, the majority ignores the fundamental difference between judicial instructions and instructions given to an accused person by other participants in criminal justice proceedings. In our judicial system, instructions by judges play a unique role. We routinely tell the jury to follow the instructions given by the trial judge, rather than those offered by counsel. See, e.g., *State* v. *Correa*, 241 Conn. 322, 352-53, 696 A.2d 944 (1997). We expect the jury to follow judicial instructions to cure the harmful effect of improper actions by counsel. See *State* v. *Cooper*, 227 Conn. 417, 441, 630 A.2d 1043 (1993). In each instance, we presume that the members of the jury will give conclusive weight to the instructions that they have been given. We do not ask the jury, in announcing its verdict, to attest to its reliance on the instructions. The state has cited to us no case in which reliance on express judicial instructions has not been presumed and an evidentiary foundation to establish reliance has been required.

In sum, grand jury testimony that is given without invocation of constitutional privilege, rather than compelled to be given, must be evaluated in its own context. On the present record, I am persuaded that the most significant aspect of that context for the present defendant was the order of secrecy purporting to preclude future disclosure of his testimony to the public at large in any forum, including the state's introduction of that testimony in its case-in-chief charging him with criminal misconduct. Although the state intimates that some of the terms in that order were ill-advised and incomplete, I would hold that these flaws, if flaws they were,[12] do not defeat the presumption that the defendant relied on the grand juror's order in toto. There was no reason

---

[12] Grand jurors conducting future investigatory grand jury proceedings would be well advised, however, to avoid the risk of misunderstanding by limiting the scope of any order of secrecy to reflect the possibility of future adversarial proceedings.

for the defendant to perceive any inconsistency between the grand juror's instructions and those of the state's attorney. In my view, the defendant must be presumed, under these circumstances, to have given his testimony in reliance on the instructions of the grand juror.

Because of the specific instructions contained in the order of secrecy given by the grand juror to the defendant, and because of the absence of contemporaneous objection thereto by the state, I would affirm the judgment of the trial court. Accordingly, I respectfully dissent.